310 So.2d 241

**Joel OSNER**

v.

**STATE.**

**8 Div. 312.**

Court of Criminal Appeals of Alabama.

Nov. 26, 1974.

Rehearing Denied Dec. 17, 1974.

Roger H. Bedford, Russellville, for appellant.

522

William J. Baxley, Atty. Gen., and John S. Andrews, Asst. Atty. Gen., for the State.

HARRIS, Judge.

Appellant was convicted of possession of marihuana. He was represented at arraignment and trial by retained counsel, who represents him on appeal. He pleaded not guilty. There was a general verdict of guilty. The court sentenced appellant to a term of six years in the penitentiary and assessed a fine of $7,500.00 against him.

Omitting the formal parts, the indictment reads as follows:

"The Grand Jury of said County charge that before the finding of this indictment Joel Deane Osner, whose name is unknown to the Grand Jury other than as stated, did unlawfully possess a controlled material, compound, mixture, or preparation containing the hallucinogenic substance, to-wit: marijuana, in violation of Section 204(d) of the Uniform Alabama Controlled Substances Act, of September 14, 1971, against the peace and dignity of the State of Alabama."

In the early morning hours of April 4, 1972, a police officer of Red Bay, Franklin County, Alabama, was parked at the intersection of Highway 24 and Golden Road in that city. He was working the third shift and was alone in a marked patrol car with a blue light on top. While parked he saw a 1971 Dodge van truck approach the intersection and stop for the red light. When the light changed the driver of the van turned right on Highway 24 headed west toward the Mississippi State Line, which was about one-half mile away. The officer observed that the glass panels on

the entire left side of the van had curtains over the glass panels. There were no curtains over the glass panels on the right side of the van nor were there curtains over the two glass panels in the double doors to the back of the van. The officer saw two occupants on the front seat. The driver was a white male and he had a white female companion.

The officer pulled in behind the Dodge van and followed it for a quarter of a mile. He saw the vehicle had a *1971* Georgia tag and he decided to check it out. He cut on the blue light and stopped the van about fifty to seventy-five yards from the State line. Appellant got out and walked back to the patrol car and asked the officer if he had done anything wrong. The officer got out and told appellant to get out of the highway and get between the two vehicles and asked him where he was going and appellant said he was going to Huntsville. The officer told him if he was going to Huntsville, he was going in the wrong direction and asked him for his driver's license and tag registration. Appellant pulled out his billfold and while looking for the requested items, the officer looked in the van through the glass panels in the rear doors with a flashlight. He saw six or seven packages the size of a brick stacked under the curtain side of the van. Some were wrapped with brown paper and some were in clear plastic or cellophane. Some of the bundles were broken and the contents appeared to be *dried grass*. The officer asked appellant what he was hauling and appellant asked him if had a search warrant and the officer said no but that he could get one. Appellant then asked if he would have to stay there until he got a search warrant and the officer told him that he would. Appellant put his hand into his left pocket and the officer stepped back and unsnapped his pistol and ordered him to take his hand out of his pocket. Then appellant said he did not have a weapon and pulled his hand out with a large roll of currency and asked the officer to take the money and Kilos and forget he had ever seen them. The officer

refused saying "he was not that kind of lawman", and asked appellant if he cared if he looked in the van. Appellant said, "You might as well, I am in trouble anyway, I might as well", and opened wide both rear doors. The officer observed more brick-like bundles, some wrapped in brown and some in plastic covering. He also saw a large tarpaulin in the back of the van.

The officer placed appellant under arrest for attempted bribery and possession of marihuana, searched him for weapons and locked him in the patrol car. The officer went to the passenger side of the van and arrested the girl for possession of marihuana and put her in the back seat of the patrol car with appellant and locked the car. Appellant then said to the officer, "Can't we make some kind of deal so we can let her go? Can you take me and the marihuana and let her go?". The officer said he could not. The officer radioed to the only other police officer on duty and he arrived in five or ten minutes. Before the last officer got to the scene, the arresting officer returned to the open van and lifted the tarpaulin and saw several hundred more bundles similar in color and size as the ones that were in plain view. When the other officer arrived, he was shown the contents in the van and the doors were closed and locked. The arresting officer drove appellant and the girl to the city jail and locked them up. Before they were put in the cells, the officer read them the *Miranda* rights and warnings from a card furnished the police department by the district attorney. The other officer drove the Dodge van to the city hall.

The van was carried to a local service station and locked up in the wash area. The arresting officer kept the keys to the van and posted the other officer to guard the van and he stayed with the van until late the next morning when the contents of the van were inventoried in the presence of the district attorney, the sheriff and an investigator. There were 387 packages or bundles which weighed approximately 800

pounds. The van and the contents were turned over to the sheriff of Franklin County. The contents were locked in a safe in the jail until April 12, 1972, when everything was turned over to six agents with the United States Customs in Mobile, except one bundle which was retained for use as evidence in this case. In addition, samples were taken from a number of other bundles to be sent to the laboratory for testing.

The six special agents from the Customs Office in Mobile came to Russellville at the request of the sheriff. The sheriff turned over the 1971 Dodge van and approximately 384 individual bricks of vegetable matter weighing about 750 pounds. When the agents got back to Mobile, the vegetable material was turned over to one of the Seizure Clerks in the District Director's Office. Thirty-eight (38) one-ounce samples were taken from 38 different bricks and sent by registered mail to a Customs Chemist in New Orleans, Louisiana, for laboratory examination together with one whole brick. The other material was locked in a safe in the office of the District Director. The van was put in storage.

The Clerk or Custodian of Seizure received the samples from the Chemist in New Orleans on May 8, 1972, and she initialed the package, wrote the case number on it, the date and time received, and locked it in the vault with the other evidence. The package remained in the locked vault until August 23, 1972, on which date it was removed from the vault by the Custodian and carried to Russellville for the trial of this case. The 38 different samples taken from 38 random bricks were analyzed by the Chemist and his findings were placed in different envelopes and were introduced in evidence as State's Exhibits 3 through 41 without objection.

Mr. F. V. Eagerton testified that he was employed as a Chemist in the United States Customs Laboratory in New Orleans and had been so employed for ten years. He earned a B.S. degree in Chemistry from Mississippi State University and he had eight years experience as a Chemist prior to his employment with the Customs Laboratory. He further testified that he had examined between 25 and 30,000 samples of marihuana. He said he conducted a microscopic examination and a chemical color test on the contents of the registered mail package he received from the U.S. Customs Office in Mobile on April 18, 1972.

He testified that it was his judgment and opinion, based upon both the microscopic examination and chemical color test, the contents of said packages were Cannabis Sativa commonly called marihuana. After completing the tests and analyses, each envelope was sealed with scotch tape, initialed and re-packaged and returned by registered mail to the Seizure Custodian, District Director of Customs in Mobile, Alabama. See Peppers v. State, Ala.App., 304 So.2d 39, 1974.

Appellant moved to exclude this witness's testimony on the ground that it was not sufficiently shown that he possessed the necessary qualifications to render such an opinion. The motion was overruled.

This was the arresting officer's first arrest for possession of marihuana. Actually he had never seen marihuana before this occasion. He had read pamphlets, books and publications issued by The American Federation of Police concerning marihuana. These publications contained pictures of marihuana and depicted marihuana in brick form. In the articles he had read concerning this contraband, he had seen the word *Kilos* prominently mentioned or associated with marihuana. Based upon the pictures he had seen and the description of marihuana in the publications he had read, along with appellant's use of the word *Kilos*, the officer was clear in his own mind that he had stopped a man on routine check who was in possession of marihuana. Thus, we are squarely met with a Fourth Amendment problem and to

resolve it, we must be controlled by the law of searches and seizures.

The officer conducted a warrantless search of the Dodge van and it cannot be upheld as valid unless it falls within one of the exceptions to the rule that a search must be conducted pursuant to a valid search warrant.

In Daniels v. State, 290 Ala. 316, 276 So.2d 441, Justice Bloodworth, writing for a unanimous court, set forth six exceptions under which warrantless searches have been upheld. These are:

(1) In "plain view";

(2) With "consent" voluntarily, intelligently and knowingly given;

(3) As "incident to a lawful arrest";

(4) In "hot pursuit" or "emergency" situations;

(5) Where "exigent circumstances" exist coincidental with "probable cause" (as in the case of movables); and,

(6) In "stop and frisk" situations.

We believe the search in this case can be upheld on any one of four of the exceptions under which warrantless searches have been held valid, viz: (a) plain view, (b) consent, (c) probable cause, and (d) exigent circumstances.

■ Appellant does not question the authority of the officer to stop him on the public highways of this state and check his operator's license but contends he did not have probable cause to arrest him and conduct a search. Inasmuch as the officer saw that the van truck had a *1971 Georgia tag,* and he stopped appellant in April, *1972,* the officer had a right to check appellant's tag registration to see if he was operating a motor vehicle on the public highways of this state bearing an outdated registration. It was during appellant's search through his billfold that the officer took · his flashlight and took a fleeting glance inside the van through the clear glass panels in the double doors of the truck and saw what he knew in his own mind was marihuana. He could have legally arrested appellant for possession of contraband at that very moment. What transpired seconds later when appellant offered him a roll of money "and the Kilos and forget he had ever seen them" served only to confirm the officer's knowledge that a felony was then and there being committed in his presence. It must be remembered that appellant had not been taken into police custody until he made the voluntary and spontaneous outburst in attempting to bribe the officer and surrender the marihuana. There was more than probable cause to take appellant into custody on a charge of attempted bribery and possession of marihuana. *Miranda* is without application in these circumstances. Bedingfield v. State, 47 Ala.App. 677, 260 So.2d 408.

■ The subsequent search of the motor vehicle without a search warrant was likewise valid. Chambers v. Maroney, 399 U. S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419; Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543.

■ A mere observation of that which is in full view is not a search, and testimony concerning such objects is not inadmissible as an illegal search or seizure. Vincent v. State, 284 Ala. 242, 224 So.2d 601; Segers v. State, 283 Ala. 694, 220 So.2d 882; Yeager v. State, 281 Ala. 651, 207 So.2d 125; Parks v. State, 46 Ala.App. 722, 248 So.2d 761; Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L. Ed.2d 1067; Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564. This answers any contention as to any inadmissibility as to the testimony relating to the marihuana and the marihuana itself.

■ We have held that the officer had probable cause to arrest appellant before

**526**

he actually took him in custody. The point where appellant was actually stopped was only 50 to 75 yards from the Mississippi State line. This fact alone supplied the "exigent circumstances" to make the warrantless search of the van truck. Had the officer left the scene to seek out the mayor of the town to secure a search warrant it would have been a vain and foolish thing to have done. The officer would not have been out of sight before appellant would have crossed the State line and that would have ended the matter. Chambers v. Maroney, *supra*.

■ In addition to all of the above appellant consented to the search of the truck and opened wide the two rear doors of the van. Bumper v. North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797; Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461.

Appellant filed a motion to quash the indictment on the ground that no legal evidence was presented to the grand jury. The district attorney aided the grand jury in its investigation of this case. He testified on the motion to quash that there were three witnesses who gave testimony before the grand jury, viz., the arresting officer, the officer who drove the van to the station house, and an investigator. In addition there was an unsigned or unverified laboratory report sent to the United States Department of Justice from the Bureau of Narcotics and Dangerous Drugs which the district attorney presented to the grand jury.

■ Legal evidence before grand jury may be given by the testimony of witnesses and may be on hearsay alone, or furnished by documents laid before them. Douglas v. State, 42 Ala.App. 314, 163 So.2d 477, certiorari denied, 276 Ala. 703, 163 So.2d 496, reversed on other grounds, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934; Costello v. United States, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397; Pitts v. State, 53 Ala. App. 373, 300 So.2d 416.

Finally, appellant contends that where a lesser included offense is embraced in an indictment such offense must be submitted to the jury.

In Powers v. State, 49 Ala.App. 690, 275 So.2d 369, we held that whether possession of marihuana was a felony or a misdemeanor depended upon the use of the prohibited substance; if for personal use only, the crime is a misdemeanor, otherwise, a felony. In *Powers* the substance was a match box of marihuana and we held that the jury could have inferred that it was for personal use only and that issue should have been submitted to the jury.

In this case, appellant was in possession of 800 pounds of marihuana consisting of 387 bricks. To indulge in the speculation that 800 pounds of marihuana is for personal use only is to strain credulity almost to the breaking point.

Nevertheless, the trial court charged the jury that, "any person who possesses *any* marihuana for his personal use only is guilty of a misdemeanor." (emphasis supplied).

The indictment was drawn in the language of the statute and there was no error in overruling the demurrer. Lowe v. State, 48 Ala.App. 740, 267 So.2d 529.

The punishment for possession of marihuana is prescribed by Title 22, Section 258(47), Code of Alabama 1940. This section fixes the range of punishment for possession of marihuana but is silent as to whether the jury or the judge may impose the fine.

Title 15, Section 335, Code of Alabama 1940, is controlling here:

"In prosecution by indictment, the jury shall fix and determine the amount of the fine; and no judge shall remit or reduce the fine so fixed, unless he spreads his reasons for so doing in full on the minutes of the court."

■ Where the jury fails to impose a fine, the trial judge is without authority to do so. Carpenter v. State, 50 Ala.App. 543, 280 So.2d 804.

■ The judgment of the court below to the extent that it imposed a fine of $7,500.00 in addition to the sentence of six years in the penitentiary must be treated as surplusage.

In addition to a consideration of all matters urged upon us in oral argument, and in brief, for a reversal of this case, we have carefully searched the record for errors injuriously affecting the substantial rights of appellant and have found none.

The judgment of the lower court is affirmed.

Affirmed.

TYSON and DeCARLO, JJ., concur.

ALMON, J., concurs in the result.

CATES, P. J., dissents.