John Willie Minnifield was indicted for the second degree burglary of Spiller Associated Furniture Stores, Inc., contrary to § 13-2-41, Code of Alabama 1975. At trial Minnifield was found guilty as charged, and because of an extensive criminal record was sentenced to serve the maximum term of ten years in the state penitentiary.
Robert Meigs, a police officer with the Demopolis Police Department, was called as the State's first witness and testified that he was a fingerprint technician with that department and had received training in fingerprint analysis from the F.B.I. He stated that, at 11:39 p.m. on September 8, 1979, he had received a radio call from the Demopolis chief of police requesting that he proceed to the Spiller Furniture Company because the lights were on inside the building. The officer stated that, upon arriving, he checked the front door and found it secure, but that, upon checking the rear door, he noted that it was "standing about six to eight inches open" (R. 47). He entered the building and found that several items, including some bank bags, a cash register drawer, a file and papers were lying on the floor of the office, and that the office safe was closed but not locked.
Officer Meigs further testified that he dusted for fingerprints and was able to lift two latent fingerprints, one from the cash register drawer, and the other from an empty fruit jar. He stated that numerous other prints were evident, but were too smudged to be readable. He stated that he left after Mrs. Avery, an employee at the store, arrived and determined that a bank bag containing cash and checks, and a quantity of change from the fruit jar were missing. Officer Meigs testified that he had occasion to see appellant later that night on a street where appellant's automobile had been stopped by other police officers. He stated that appellant's automobile was a white Plymouth, and that, upon his arrival, the engine was still running. He further stated that he drove the automobile to the Demopolis Police Station, and that it had a very noisy muffler. Officer Meigs testified further that he took appellant's fingerprint impressions at the Demopolis police station, and later compared them to the impressions he had lifted at the Spiller Furniture Company. He stated that, based upon his training and experience, the fingerprints lifted at the store matched impressions from two of appellant's fingers.
John R. Brock, a lieutenant with the Demopolis Police Department, testified that he was on patrol around 11:30 p.m. on Saturday, September 8, 1979, when he saw an individual walking about a block from the Spiller Furniture Store, and about a block *Page 1148 
from the officer's vehicle. The officer stated that the individual was moving away from him, and that he could not describe in detail anything about the person except that the person was dressed in dark clothing and carrying something. The witness testified that he drove around the block in order to intercept the individual, but was unable to locate the person he saw. It being late on Saturday evening, all downtown stores were closed. At that point, he heard radio calls concerning lights being on in Spiller Furniture Company, and the subsequent discovery of the open door. Lieutenant Brock stated that, after that, he and an Officer Hoven continued to look for the individual that Lieutenant Brock had seen, and that tracking dogs were brought in by the Sheriff's Department. A short time later, the witness stated, Officer Hoven located a white Plymouth parked in an abandoned parking lot near the railroad depot, just a few blocks from Spiller Furniture Company. The automobile was "backed up into some bushes. I had to get there and go in some of the weeds to look at the tag number" (R. 65). After reporting the tag number over the radio, both Lieutenant Brock and Officer Hoven resumed patrol in their respective police cars.
Some time later, around 3:00 a.m. this same night, Lieutenant Brock testified, he was patrolling in his vehicle when he reached the intersection of the street on which the depot and parking lot were located and saw a white automobile moving up that street. The officer stated that he pulled into the parking lot of a convenience store to wait for the white car, and that the car subsequently passed his vantage point. Lieutenant Brock then followed the car and, after confirming by radio that the tag number matched that of the white Plymouth which had been parked near the depot, the officer pulled the car over. Lieutenant Brock testified that the occupant of the white car, identified by his driver's license, was John Willie Minnifield, and that he was dressed in a light gray suit. The officer further stated that he could see dark blue work clothes in view on the back seat, and that he had remembered seeing a "gray suit" on the seat when the car had been parked at the abandoned parking lot.
The officer notified other officers by radio that he had the appellant stopped, and Chief Johnson and a Deputy Mason arrived shortly thereafter. Appellant, when questioned as to why he had left his car parked in the parking lot, responded that he had had car trouble and was now attempting to take the car to get it fixed. Lieutenant Brock further testified that Chief Johnson questioned appellant as to the contents of a bag on the back seat of the car, and that appellant then emptied the bag, which contained "toilet articles, shaving gear, and dirty clothes" (R. 69) into the street. Further, upon being asked permission to examine the car's trunk, appellant removed the trunk key from his key ring and opened the trunk himself.
On cross-examination, Lieutenant Brock stated that he could not identify the individual he had seen about 11:30 p.m., and that no one officer had kept the white Plymouth under continuous surveillance from the time it had first been discovered until appellant was stopped driving it at 3:00 a.m.
Officer Marty Hoven of the Demopolis Police Department testified that he was involved in the investigation of the burglary at Spiller Furniture Company. He stated that he heard the initial radio calls concerning the break-in at the store, but was directed by Chief Johnson to assist Lieutenant Brock in locating the individual that Brock had seen earlier. The witness stated that, though he drove around in the general area, he was unable to find the person, but did locate a white Plymouth automobile parked off the street near the railroad depot. He stated that he checked the car out, finding its hood still warm and a light gray suit lying on the back seat. He further stated that he later saw appellant wearing this suit. After notifying the other officers by radio and noting the tag number of the vehicle, the officer resumed patrol in a five to seven block radius of the location of the car, but saw no one else. He later returned to a routine patrol, and testified that, at *Page 1149 
3:09 a.m., he heard on the radio that Lieutenant Brock had stopped the white Plymouth. He testified that he proceeded to the scene and, upon arrival, noted that the car's engine was still running and that its exhaust was very loud. He observed appellant was wearing the gray suit, and stated that appellant gave his trunk key to the chief, who, in turn, opened the trunk of the car. He also observed blue jean pants and a blue jean jacket on the back seat of the car, and witnessed the chief remove a green bank bag from underneath the front seat of the car.
On cross-examination, Officer Hoven stated that Lieutenant Brock had not been present when he first discovered the white Plymouth, and did not come by while he was at that location.
Mrs. Olivia Avery, the bookkeeper for Spiller Furniture Company, testified that, on the night in question, she was awakened by a telephone call from the police concerning the break-in. She stated that, earlier that day, around 5:00 p.m., she and another employee, being the last to leave, had secured the doors, and that the back door was locked by placing a bar across it on the inside and locking it. The store's receipts and miscellaneous change kept in a fruit jar were both locked in the office safe. She further testified that, upon her arrival, she saw that the bar across the back door had been unlocked and removed, and later determined that entry had been initially gained through a sky-light. She stated that approximately $3700.00 had been taken, and that a green bank bag was missing. The witness then identified a State's exhibit as the missing bank bag, and stated that she had identified the bag the morning after the burglary at the Demopolis Police Station.
Johnny Johnson, the police chief of Demopolis, testified that, on the night in question, around 11:30 p.m., he was driving past the Spiller Furniture Company when he noticed a light on inside the building. He radioed other officers on duty to determine if the light being on was unusual, and then dispatched another officer to investigate. About this time, Chief Johnson stated, Lieutenant Brock radioed concerning the individual he had seen, and the chief proceeded to help Lieutenant Brock locate that individual. Subsequently, as he was driving to the area, he received another radio report that a burglary had been discovered at Spiller Furniture Company, and he returned to that store to back up the officer. After arriving on the scene and determining that no one was inside the store, Chief Johnson radioed the remaining police cars to "seal off" the area and locate the individual that Lieutenant Brock had seen. The chief further stated that the Sheriff's Department personnel assisted in the search, and that Officer Hoven then discovered the white Plymouth. Chief Johnson then stated that the tag number of the Plymouth was checked by computer, and that he proceeded to determine that entry into Spiller Furniture Company had been gained through a sky-light.
Later that same evening, Chief Johnson received a radio call that Lieutenant Brock had stopped the white Plymouth, and the chief proceeded to the scene. He stated that, upon arriving he saw appellant, dressed in a light gray suit, standing with Lieutenant Brock at the rear of the car, the engine of which was still running. The chief stated that appellant, in response to questioning, answered that he was having car trouble, and agreed to allow the chief to examine the trunk of the car, unlocking it himself. Chief Johnson further noted that he looked into the car and saw a letter opener on the front seat, and items of clothing on the back seat, and that he determined items contained in the trunk to be burglary tools. At this point, the chief stated, he reached under the front seat of appellant's car and located a bank bag, which contained a large amount of cash and checks endorsed to Spiller Furniture Company, the total amount being determined to be $3,772.00.
On cross-examination Chief Johnson testified that he had not ordered anyone to establish a continuous surveillance of the parked white Plymouth because it would *Page 1150 
possibly frighten off the driver if he returned to the area.
The State rested, and appellant's motion to exclude the State's evidence was overruled.
Appellant then testified on his own behalf and stated that, on the day in question, he had been driving from Montgomery to Jackson, Mississippi, to retrieve a car that he had put in a repair shop there some weeks before. He stated that, while so traveling, his car began "skipping awful bad" so he stopped in the parking lot of a department store in Demopolis in order to call an acquaintance who lived in Demopolis. Being unable to reach his acquaintance by telephone, appellant stated, he enlisted the aid of a passerby who claimed to know his acquaintance. Appellant testified that he then followed this person on into town and near the depot his car broke down. At this point, appellant testified, he just parked the car off the street in an old graveled parking lot and left it. From there he and the other individual "went several places" and "got to drinking beer" (R. 106), and eventually went to Greensboro and Uniontown.
After this series of trips, appellant stated, he, his companion and a third person, a female picked up along the way, returned to appellant's car, still parked where he had left it. He stated that his male companion did something to the engine, the car started though it continued to skip, and appellant proceeded to drive off toward Highway 80, where he hoped to find a mechanic. He further stated that he saw a police car drive by, and that it turned around and followed him for a short distance until he was pulled over. Appellant testified that the police officer asked to see his license, and stated that there had been a burglary and that his (appellant's) car had been parked in the general vicinity. Appellant stated that he attempted to explain his story to the officer.
Appellant denied that he had burglarized Spiller Furniture Company or that he had had the bank bag in his possession when stopped. He further stated that he had served a thirteen year sentence, and eighteen months of a four year sentence for burglary and grand larceny in the state penitentiary, and had later served thirty-six months in a federal penitentiary on similar charges.
On cross-examination, appellant testified that he did not see where Chief Johnson had removed the bank bag from, and denied that any letter opener was found in the car. He also stated that he had been wearing the gray suit the entire time, that he had never been in Spiller Furniture Company, and had not touched the cash register, the safe, or any fruit jar there.
 I
Appellant initially contends that the evidence of the bank bag, which was found underneath the front seat of appellant's automobile, was the fruit of an unlawful search and seizure and should have been suppressed by the trial court pursuant to his written motion to suppress. Concededly, Lieutenant Brock's initial stop of appellant and the subsequent search of his vehicle were conducted without a warrant, and thus must be analysed in light of the familiar principles enunciated inCoolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022,29 L.Ed.2d 564 (1971):
 ". . . [T]he most basic constitutional rule in this area is that `searches conducted outside the judicial process without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment — subject only to a few specifically established and well-delineated exceptions.' The exceptions are `jealously and carefully drawn,' and there must be a `showing by those who seek exemption * * * that the exigencies of the situation made that course imperative.' `[T]he burden is on those seeking the exemption to show the need for it.'" (Footnotes omitted.)
We perceive the first major portion of appellant's argument to be that Lieutenant Brock, under the circumstances known to him at the time, did not have probable cause to stop appellant in the first place, *Page 1151 
and thus any resulting search yielding incriminating evidence was the direct result of unlawful police activity. We have the benefit of the trial court's written order denying the motion to suppress and quote from its excellent summary of the relevant facts:
 "1. The Chief of Police of Demopolis, Alabama, noticed lights were turned on in a building in downtown Demopolis about 11:30 P.M. on a Saturday night. About one block away, Officer Brock saw a man walking near the railroad tracks carrying something. He attempted to locate the man after he circled the block but did not again see him.
 "2. The police discovered that Spiller Furniture Company (the building where the lights were on), had been entered, the safe opened and the contents taken. Shortly after ascertaining that the store had been entered, the police discovered an automobile parked about a block and one-half away. The automobile was backed into some bushes near the railroad depot and was about 90 feet off of the street. The area was not where an automobile would normally be parked. The police were instructed to watch the auto and the tag number was checked with the State.
 "3. Officer Brock observed the auto that had been backed into the bushes, traveling south on the same street near where it was parked. It was seen at 3:00 A.M. and about three blocks from where it had been parked. Downtown Demopolis is not a beehive of activity at 3:00 A.M. on a Sunday morning; in fact, very few autos can be seen.
 "4. Officer Brock stopped the automobile driven by the Defendant and shortly thereafter, several officers questioned the Defendant at the place where he was stopped while his auto was still running. The Defendant informed the officers he was going to Mississippi and had car trouble. He voluntarily removed a trunk key from his key ring without turning off the ignition and gave it to the policemen and told them they could search his trunk. The officers discovered tools and equipment of a type used by burglars. The Defendant told the police he had a prior criminial record and had served time in the penitentiary for burglary.
 "5. At this time, Chief Johnson reached under the driver's seat and found a bag of money that had been removed from the safe at Spiller's Furniture Company. On the seat of the car was a letter opener that had been taken from Attorney William Coplin's office, which is located above and adjacent to Spiller Furniture Company. The Defendant was placed under arrest after the bag containing the money was found."
(R. 16-17)
For the purposes of Fourth Amendment analysis, it is clear that Lieutenant Brock's initial stop of appellant's vehicle constituted a "seizure" within purview of the Fourth Amendment.Delaware v. Prouse, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660
(1979), and cases cited therein. We do not find, however, that probable cause is always the standard to be applied in situations of this sort, as it is well recognized that in certain instances an investigatory stop may be made under circumstances that constitute less than probable cause within the commonly accepted meaning of that term. In Terry v. Ohio,392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the decision recognizing the efficacy of the "stop and frisk" procedure, the Supreme Court explained warrantless stops on less than probable cause:
 ". . . [W]e deal here with an entire rubric of police conduct — necessarily swift action predicated upon the on-the-spot observations of the officer on the beat — which historically has not been, and as a practical matter could not be, subjected to the warrant procedure. Instead, the conduct involved . . . must be tested by the Fourth Amendment's general proscription against unreasonable searches and seizures . . . In order to assess the reasonableness of [an officer's] conduct as a general proposition, it is necessary `first to focus upon the governmental interest which allegedly justifies official intrusion *Page 1152 
upon the constitutionally protected interests of the private citizen,' for there is `no ready test for determining reasonableness other than by balancing the need to search [or seize] against the invasion which the search [or seizure] entails . . . And in justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion."
(Footnotes, citations omitted.)
 See also, Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972).
The concept of the investigative stop has been adopted by statute in Alabama, § 15-5-30, et seq., Code of Alabama 1975, and though Terry was factually concerned with stops of suspicious characters on sidewalks, it is clear from the subsequent decisions of both the United States Supreme Court and the appellate courts of this State that the Terry principle is equally applicable to the stop of a vehicle. See Delaware v.Prouse, supra; United States v. Brignoni-Ponce, 422 U.S. 873,95 S.Ct. 2574, 45 L.Ed.2d 607 (1975); Almeida-Sanchez v. UnitedStates, 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973);Berryhill v. State, Ala.Civ.App., 372 So.2d 355 (1979); Goodmanv. State, Ala.Cr.App., 356 So.2d 691, cert. denied, Ala.,356 So.2d 698 (1978); Herrin v. State, Ala.Cr.App., 349 So.2d 103,cert. denied, Ala., 349 So.2d 110 (1977). Recognizing that "effective crime prevention and detection" are important governmental interests, Terry v. Ohio, supra, we are persuaded that the action of Lieutenant Brock in stopping appellant's vehicle to question him as to his activities and whereabouts that night was a legitimate and minimally intrusive procedure under the circumstances. From the trial court's findings, set forth above, we hold that there were "specific and articulable facts" from which the officer could have formed a reasonable suspicion that appellant had been involved in the burglary earlier that evening, and indeed "it would have been poor police work . . . to have failed to investigate this behavior further." Terry v. Ohio, supra. The initial stop of appellant was constitutionally permissible. Cases cited.
Appellant further argues, however, that, despite the stop, the subsequent search which led to the discovery of the bank bag was still unconstitutional as not under any recognized exception to the warrant requirement. Demopolis Police Chief Johnson testified that, when he arrived on the scene, appellant was standing outside his vehicle, and the vehicle's engine was still running. Chief Johnson stated that he asked appellant if he could look in the vehicle's trunk, and that appellant agreed and "took the trunk key off of the key ring and he opened the trunk himself" (R. 95). Inside the trunk were items that the chief recognized from his experience to be "burglary tools." At that point, the chief reached under the front seat, found the bank bag, and placed appellant under arrest.
Appellant did not at trial, and does not now, argue that he did not consent voluntarily to the chief's request to look in the trunk. Of course, a voluntary consent to search may act as a waiver of Fourth Amendment rights, thus rendering the use of a warrant unnecessary. Weatherford v. State, Ala.Cr.App.,369 So.2d 863, cert. denied, Ala., 369 So.2d 873, cert. denied,444 U.S. 867, 100 S.Ct. 141, 62 L.Ed.2d 91 (1979); Hardy v. State,53 Ala. App. 75, 297 So.2d 399 (1974). Without belaboring a point not raised below, we hold that the oral response of appellant, coupled with his affirmative act in opening the trunk, acted as a freely and voluntarily given consent. Similar cases factually include Dorsey v. State, Ala.Cr.App.,376 So.2d 816 (1979); Kirkland v. State ex rel. Baxley, Ala.Civ.App.,340 So.2d 1121 (1976); cert. denied, Ala., 340 So.2d 1127 (1977);Woods v. State, 57 Ala. App. 1, 325 So.2d 517 (1975), cert.denied, 295 Ala. 430, 325 So.2d 519 (1976); and Osner v. State,54 Ala. App. 520, 310 So.2d 241 (1974), cert. denied, 293 Ala. 769, 310 So.2d 247 (1975).
It is, of course, well settled that a warrantless search may be conducted of an *Page 1153 
automobile where probable cause and exigent circumstances co-exist. Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975,26 L.Ed.2d 419 (1970); Carroll v. United States, 267 U.S. 132,45 S.Ct. 280, 69 L.Ed. 543 (1925); Daniels v. State, 290 Ala. 316,276 So.2d 441 (1973); Preyer v. State, Ala.Cr.App.,369 So.2d 901 (1979); Hancock v. State, Ala.Cr.App., 368 So.2d 581, cert.denied, Ala., 368 So.2d 587 (1979). We find that when the circumstances known to the officers at the time of appellant's initial stop are further combined with the burglar tools in his vehicle's trunk, the fact that he admitted previous convictions for larceny and burglary, and the fact that dark clothing was seen in plain view on the back seat of the vehicle (the individual seen earlier had been wearing dark clothing), ample probable cause existed at that time for a further search of appellant's vehicle for weapons and contraband. Further, the inherent mobility of the automobile, the fact that appellant had now been alerted, and the time of the occurrence (3:00 a.m.) all combine to present exigent circumstances which would justify an immediate warrantless search. Cases cited. There was no error in overruling appellant's motion to suppress, and the bank bag was properly received into evidence.
 II
During the prosecutor's direct examination of Chief Johnson, the following occurred:
"Q. Describe the articles laying on the front seat.
 "A. There was a letter opener laying there that I observed laying on the front seat.
 "MR. POOLE: I object, Your Honor. That question is prejudicial and has nothing to do with this case.
"THE COURT: Well, overrule that objection."
(R. 94)
Appellant argues that the testimony regarding the letter opener was prejudicial in that it is, according to appellant's brief, "the subject of another charge of burglary against the defendant, John Willie Minnifield." Despite the fact that there was no other testimony of any other burglary, nor any testimony that the letter opener was in fact stolen, we find that appellant's objection was not propounded until after the question had been asked and answered, Barnett v. State,52 Ala. App. 260, 291 So.2d 353 (1974), and no motion to exclude was made and overruled. This occurred despite the fact that Lieutenant Brock was asked the same question without objection (R. 68), and we note that later appellant was questioned as to the letter opener without objection. The trial court did not commit error in overruling the objection. Hicks v. State, Ala.Cr.App., 372 So.2d 61 (1979); White v. State, Ala.Cr.App.,347 So.2d 566 (1977); Retowsky v. State, Ala.Cr.App.,333 So.2d 193 (1976).
 III
Appellant finally argues that the trial court erred in a portion of its oral charge to the jury. During the course of that charge the following occurred:
 "THE COURT: * * * I'm embarrassed to tell you at this time that we have not been able to located [sic] State's Exhibit 5. It was here; we are going to continue to look for it and give it back to you if we find it. Someone said it may have fallen through on the floor under here and we've made a diligent search for fifteen or twenty minutes and we can't find it. We don't have that piece of evidence to give you at this time but you should consider that evidence the same as you would any other evidence. If you want to disregard it since you don't have it, you may do so, that's State's Exhibit 5 that we can't find; if you want to consider it, what was said orally, spoken here in Court, you may do so. Approach the bench.
"(Attorneys approached the bench)
. . . . .
 "(The following objection was made outside the presence of the jury but before they retired. *Page 1154 
 "MR. POOLE: I object to the portion of the instruction concerning the lost item of evidence.
"(Jury retires)
"(Jury returns)
 "THE COURT: Ladies and gentlemen we've located State's Exhibit 5. It had fallen through all the way down to the floor and we took the witness chair up and we found State's Exhibit 5 so I'll give it back to you and please disregard my instruction about us not being able to find it."
(R. 120-121)
The "lost" exhibit was a card displaying a fingerprint lifted at Spiller Furniture Company and identified as that of appellant's. We do not see that any error was committed by the trial court in explaining that one of the exhibits was not included with the others when given to the jury initially. The trial court's comments in this regard certainly were not unfavorable in giving any undue weight to the probative value of this particular piece of evidence. Thus, any conceivable error would have accrued to the benefit of appellant by allowing the jury to disregard a piece of evidence which was particularly incriminating to appellant.
We have carefully examined this record, and find same to be free from error. The judgment is therefore
AFFIRMED.
All the Judges concur.