Appellant was convicted of burglary in the second degree and the court sentenced him to ten years imprisonment in the penitentiary. At arraignment, in the presence of counsel, he waived reading the indictment and pleaded not guilty. After *Page 190 
sentence was imposed he gave notice of appeal and was furnished a free transcript. Counsel was appointed to represent him on appeal.
Prior to trial appellant filed a motion to suppress any and all items seized by the officers from his person or automobile on the date of his arrest on the grounds that no probable cause existed for stopping his automobile and conducting a search, and there was no voluntary consent to search either the automobile or his person.
At the conclusion of the suppression hearing the court made and entered of record the following findings of facts:
 "The Court having been presented with a Motion to Suppress the evidence filed by the Defendant, and the Court after considering the evidence presented in open Court, is of the opinion that the motion is not due to be granted and that the search and subsequent seizure of the items from the automobile of the Defendant was proper under the circumstances. The Court finds that:
 "1. The Chief of Police of Demopolis, Alabama, noticed lights were turned on in a building in downtown Demopolis about 11:30 P.M. on a Saturday night. About one block away, Officer Brock saw a man walking near the railroad tracks carrying something. He attempted to locate the man after he circled the block but did not again see him.
 "2. The police discovered that Spiller Furniture Company, (the building where the lights were on) had been entered, the safe opened and the contents taken. Shortly after ascertaining that the store had been entered, the police discovered an automobile parked about a block and one-half away. The automobile was backed into some bushes near the railroad depot and was about 90 feet off of the street. The area was not where an automobile would normally be parked. The police were instructed to watch the auto and the tag number was checked with the State.
 "3. Officer Brock observed that auto that had been backed into the bushes, travelling south on the same street near where it was parked. It was seen at 3:00 A.M. and about three blocks from where it had been parked. Downtown Demopolis is not a beehive of activity at 3:00 A.M. on a Sunday morning; in fact, very few autos can be seen.
 "4. Officer Brock stopped the automobile driven by the Defendant and shortly thereafter, several officers questioned the Defendant at the place where he was stopped while his auto was still running. The Defendant informed the officers he was going to Mississippi and had car trouble. He voluntarily removed a trunk key from his key ring without turning off the ignition and gave it to the policemen and told them they could search his trunk. The officers discovered tools and equipment of a type used by burglars. The Defendant told the police he had a prior criminal record and had served time in the penitentiary for burglary.
 "5. At this time, Chief Johnson reached under the driver's seat and found a bag of money that had been removed from the safe at Spiller's Furniture Company. On the seat of the car was a letter opener that had been taken from Attorney William Coplin's office, which is located above and adjacent to Spiller Furniture Company. The Defendant was placed under arrest after the bag containing the money was found.
 "The Court is of the opinion that the officers had probable cause to stop the vehicle driven by the Defendant and to search the vehicle because of the exigent circumstances. The location of the vehicle prior to the Defendant being stopped, the nearness of the vehicle to the crime, the fact that the Defendant informed the police he had been convicted of a previous crime, the consent to search his trunk, the burglary tools located in the trunk, the time of the early morning, and all attendant circumstances provided probable cause to the officer to stop the Defendant and search his vehicle. Indeed, had the police failed to stop the Defendant under these circumstances, they would have *Page 191 
been ridiculed for allowing the guilty party to escape.
 "It is, therefore, ORDERED by the Court that the Motion to Suppress the evidence is denied, and the State shall be allowed to introduce into evidence, the items taken from the automobile of the Defendant.
 "DONE and ORDERED this, the 29th day of February, 1980."
When the case came on for trial appellant made known to the court that he desired to represent himself. There was a long colloquy between the court and the appellant covering four pages of the transcript in which the court pointed out the disadvantages of not having a lawyer to represent him. He told appellant that a lawyer was familiar with the rules of evidence and would know when to object and that he was not trained and learned in the law. He assured appellant that he would appoint a lawyer to represent and defend him without cost to him. Appellant told the court that he understood everything the court was telling him but he preferred to represent himself. The court asked him if he was familiar with trial proceedings and he replied that he was and understood the legal process. The court asked how many times he had been convicted and he stated about three times. The court asked appellant if he was making a knowing and intelligent waiver that "you don't want a lawyer" and appellant said, "yes, sir." The court then stated, "I can't make you have one, but if you don't want one you can proceed yourself." Appellant replied, "Yes, sir. I appreciate that." The court then asked: "Do you understand that I will appoint one?" Appellant stated, "I understand."
Mr. William S. Poole, Jr., had been appointed to represent appellant but appellant was adamant in his desire to represent himself. The court then told appellant he would ask Mr. Poole to sit by him and let him ask Mr. Poole any question he would like to ask him, "if you'd like to do that," and appellant stated, "That will be fine." The court: "In other words, he wouldn't say anything; he'd just be there to sit at the table with you and you would handle your own defense and if you wanted to ask him anything — Do you want to do that?" Appellant replied, "Yes, sir; that will be fine." The court: "Mr. Poole, you will be his table counsel."
The trial court went to great lengths in pointing out to appellant the dangers and disadvantages of self-representation but he disregarded the advice given by the court. He knowingly and intelligently waived his right to court appointed counsel. His choice to represent himself was made with his eyes wide open. The trial court could not force appellant to accept the aid and assistance of court appointed counsel. Faretta v.California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562.
The sufficiency of the evidence is not presented for review. There was no motion to exclude the State's evidence; no request for the affirmative charge; no exceptions to the oral charge of the court, and no motion for a new trial.
The Grand Jury of Marengo County returned two indictments against appellant charging him with the burglary of Spiller Associated Furniture Stores, Inc., and the law offices of William T. Coplin, all in the City of Demopolis, Alabama. He was convicted for the burglary of the furniture store and appealed to this court. His conviction was affirmed on October 7, 1980, 390 So.2d 1146 (Ala.Cr.App.) and certiorari was denied on December 19, 1980, 390 So.2d 1154 (Ala.)
Evidence presented by the State showed that, on September 8, 1979, at approximately 11:30 p.m., Demopolis Policeman Johnny Brock was patrolling the town of Demopolis, Alabama, when he saw a man, wearing dark clothing and carrying something, walk quickly across Main Street. Brock completed his drive around the block, but, when he returned, the individual had disappeared. At that point, Brock heard a radio report concerning lights found on in Spiller Furniture Company and the discovery of an open back door at Spiller's. Brock advised headquarters that he had seen a man walking across the street west of Spiller, then continued to patrol, looking for that person. *Page 192 
After hearing a radio report that Officer Hoven had discovered a car, Brock proceeded to the Southern Railway Depot, which was located approximately one block west of where he had seen the man crossing the street. At the depot, Brock examined the white Plymouth, which was backed into bushes. From the outside of the car, he saw a light colored suit on the back seat. Brock testified, "When we were patrolling the area we had three or four cars in the area and we just kept an eye on the car to see if it moved."
Brock continued to search the area, and, at approximately 3:00 a.m., he saw the white Plymouth moving south on the street on which the Southern Depot was located. He confirmed the tag number, then stopped the vehicle. At that point, Brock knew about the Spiller Company burglary, but he had not been notified about the burglary at Mr. Coplin's office. According to Brock, the occupant of the car, identified by his driver's license, was John Willie Minnifield, who was wearing the suit Brock had seen on the back seat of the car. Other officers were notified that the appellant had been stopped, and they, shortly thereafter, arrived on the scene. Brock testified that Chief Johnson asked permission from the appellant to search his vehicle and that the appellant agreed to the search. A trash bag containing toilet articles and underwear was found on the back floorboard. According to Brock, when Johnson asked for permission to search the trunk, the appellant agreed, removed a key from his key ring, left the motor running, and opened the trunk. Brock observed several "tools" in the trunk.
Officer Marty Hoven of the Demopolis Police Department was assigned to assist Brock in locating the individual he had seen earlier. At the Southern Railway Depot, Hoven discovered the white Plymouth in which he saw, on the back seat, a man's suit and a blue jacket. Hoven testified that he used his flashlight to look on the front seat, but he saw nothing there.
Demopolis Chief of Police Johnny Johnson testified that, on September 8, 1979, at approximately 11:39 p.m., he observed that the upstairs lights were on at the Spiller Furniture Company. After Johnson reported the observation, Sergeant Meigs was assigned to investigate the store. Subsequently, Chief Johnson heard Sergeant Meigs' report that an open back door at the Spiller Company had been discovered and Lieutenant Brock's report that a person had been seen crossing Main Street. Chief Johnson returned to the Spiller Company and found that the store had been burglarized. According to Johnson, entry had been gained through a skylight. The police and an employee of the store determined that a green bank bag containing approximately four thousand dollars was missing.
A major search was begun in the area. Johnson stated, "We sealed off the downtown area to try to capture the person that Lieutenant Brock had seen crossing the street approximately a half a block from the scene of the burglary." Later, after hearing a radio report from Brock that he had stopped the white Plymouth, Johnson proceeded to the scene. Upon arrival, he found Brock checking the driver's license of the appellant, who was standing beside his car. With the aid of a flashlight, Johnson, from the outside of the car, observed on the front seat a letter opener, later identified as the property of Bill Coplin.
Johnson testified that he asked the appellant for permission to search the trunk of the car and that the appellant granted permission, then opened the trunk. In the trunk were items which, according to Johnson, were "items that during my experience in law enforcement were considered to be burglary tools." Following discovery of the tools, further search of the vehicle was conducted. A green bank bag containing approximately four thousand dollars in cash and checks made payable to the Spiller Furniture Company was found under the front seat. On the back seat, in plain view, were "dungaree type work clothes."
Sergeant Robert Meigs of the Demopolis Police Department testified that he investigated the burglary of the Spiller Company. Upon his arrival at the store, he checked *Page 193 
the rear door and found that it was open about six inches. Meigs, a fingerprint expert whose qualifications were not questioned, raised two latent fingerprints inside the store, one from the cash register drawer and one from a glass jar in which money was kept. Both the drawer and the jar had been kept inside the company's safe. After comparing the two fingerprints with fingerprints later taken from the appellant, Meigs determined that the fingerprint on the cash register drawer had been made by the appellant.
Regarding entry into the building, Meigs stated:
 "I found that entry had been gained by going upstairs by Mr. Coplin's office and then in a hallway — going down a hallway to the end of a hall at the rear of the building, the subject climbed up over the petition out through a skylight on top of a building, across the building and into Spiller Furniture Company."
Meigs testified that a briefcase, later identified as Bill Coplin's, was found "on the floor where you go through the skylight." The officer was also present at the investigation of the burglary of Coplin's office. According to Meigs, several desk drawers and filing cabinet drawers in the office had been pulled out and the desk had been ransacked. On cross-examination, Meigs stated that he was unable to obtain any readable fingerprints from Coplin's office.
William Coplin, a practicing attorney in Demopolis, Alabama, testified that his law office was located above Rutledge Drugstore, which was adjacent to the Spiller Furniture Company. He stated that he left his office on Friday, September 7, 1979, and did not return there until the night of September 9, 1979. According to Coplin, when he left on September 7, there was a letter opener on his desk, and his briefcase was in the office. When he returned to his office on September 9, both items, as well as $137.00, were missing and his office was in "disarray." Later, the items were returned to him by the Demopolis Police Department. At the trial, Coplin identified the letter opener and the briefcase as items owned by him.
No evidence was presented by the defense. After closing arguments, the appellant moved for a mistrial, but the motion was denied by the trial court.
The first issue raised for review by this court is whether the trial judge erred by denying the appellant's motion to suppress and by overruling the appellant's objection to the admission into evidence of the letter opener. The appellant asserts that the evidence should not have been received "because there was not sufficient probable cause to justify the stopping of the defendant John Willie Minnifield's automobile by the police officers, all in violation of the Fourth Amendment of the United States Constitution."
In Minnifield, supra, we stated:
 "[W]e hold that there were `specific and articulable facts' from which the officer could have formed a reasonable suspicion that appellant had been involved in the burglary earlier that evening, and indeed `it would have been poor police work . . . to have failed to investigate this behavior further.' Terry v. Ohio, supra. The initial stop of appellant was constitutionally permissible."
Because the initial stop held constitutional in Minnifield, supra, is the same initial stop under review in the present case, we hold, for the reasons given in Minnifield, supra, that the initial stop of the appellant in the present case was constitutionally permissible. Consequently, there was no error in overruling appellant's motion to suppress, and the letter opener was properly received into evidence.
Appellant's second contention is that the trial court erred by allowing into evidence, over appellant's objection, statements concerning the break-in at the Spiller Furniture Company. The record reveals the following:
"What did you do then, if anything?
 "A. I waited until they got through with their traffic to call in and get some help on trying to locate that person; *Page 194 
when they said that the Spiller Company___
"MR. MINNIFIELD: I object to that, Your Honor.
"THE COURT: You object to what?
 "MR. MINNIFIELD: That the Spiller case; that is not involved in this case. It's involved in —
 "MR. WATKINS: We submit, Judge, that it shows motive and it shows identification.
"THE COURT: Overruled."
. . . .
 "Q. I see. Inside Spiller Furniture was it obvious that it had been burglarized?
 "A. Yes, sir, the office area was ransacked, the —
"MR. MINNIFIELD: I object to that, Your Honor.
"THE COURT: Sustained.
 "MR. WATKINS: Judge, I think we can show — the only thing the state is trying to show is that he says that this is a bogus thing; I was not there; we're going to put him there. I'm not trying him for the case. I think we have a right to put him in that building and I'm going to do it by the fingerprints.
"MR. MINNIFIELD: This is two cases —
 "THE COURT: Ladies and gentlemen, I want to explain to you that we are not trying the defendant — He's not being tried in this case at all with anything to do with Spiller Furniture Company. If any evidence comes out about someone going in Spiller Furniture Company, I want to instruct you that the defendant is not on trial for that case and it is not for your concern. He's charged with burglary in this case of Mr. Coplin's office and I'll instruct you at this time that that is not to be any evidence at all — it is not being submitted to you for your consideration about the burglary of Spiller Furniture Company. Overruled."
In C. Gamble, McElroy's Alabama Evidence, § 69.01 (1) (3rd ed. 1977), the general exclusionary rule preventing evidence of crimes not charged in the indictment is stated:
 "On the trial of a person for the alleged commission of a particular crime, evidence of his doing another act, which itself is a crime, is not admissible if the only probative function of such evidence is to show his bad character, inclination or propensity to commit the type of crime for which he is being tried. This is a general exclusionary rule which prevents the introduction of prior criminal acts for the sole purpose of suggesting that the accused is more likely to be guilty of the crime in question.
 "The foregoing exclusionary rule does not work to exclude evidence of all prior crimes, only such as are offered to show the defendant's bad character. If the defendant's commission of another crime or misdeed is an element of guilt or tends to prove his guilt otherwise than as tending to prove guilt via bad character, then proof of such other act is admissible."
In our judgment, statements relating to the Spiller burglary were admissible because they tended to prove the appellant's guilt "otherwise than as tending to prove guilt via bad character." C. Gamble, supra. The record shows that the trial judge instructed the jury to that effect.
The circumstantial evidence presented at the trial connected the appellant with the burglaries of the Spiller Company and the Coplin office. Facts relating to the two burglaries were intermixed. Coplin's briefcase was found below the skylight used to gain entry into Spiller's; the office and the store were essentially part of the same building, some of the stolen items from both places were found in appellant's car.
Evidence of the Spiller Company burglary was admissible because that crime was inseparably connected with the burglary of the Coplin office. See C. Gamble, § 69.01 (3), supra. The two crimes could be viewed as one continuous transaction.Burlison v. State, Ala.Cr.App., 369 So.2d 844, writ denied Exparte Burlison, Ala., 369 So.2d 854 (1979); Hopkins v. State,49 Ala. App. 159, 269 So.2d 175 (1972); Parsons v. State,251 Ala. 467, 38 So.2d 209 (1948); Summers v. State, Ala.Cr.App.,348 So.2d 1126, certiorari denied, Ala., 348 So.2d 1136. *Page 195 
We have carefully searched the record for errors injuriously affecting the substantial rights of appellant and have found none. The judgment of conviction is affirmed.
AFFIRMED.
All the Judges concur.