[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 679 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 680 
Dorothy Smith was indicted on one charge of possession of marijuana and one charge of possession of tablets containing pentazocine. The two cases were consolidated for trial and the jury found the appellant "guilty as charged" in each indictment. The trial judge sentenced the appellant to 15 years in the penitentiary in each case, said sentences to run concurrently with one another.
 I
Prior to trial, an evidentiary hearing was conducted on the appellant's motion to suppress. The appellant contends that such motion should have been granted by the trial judge. She argues that there was an illegal search and seizure which resulted in her arrest.
At the suppression hearing, Birmingham Police Officer Jimmy Wesson testified that at approximately 11:30 a.m. on February 23, 1983, he and his partner had set up surveillance on a known "confidence man, bunco artist." He stated that he and his partner were in an unmarked police car. He stated that while they were watching this individual, a white Toyota automobile with Ohio license plates pulled up and the individual entered the car. He stated that the white Toyota was being driven by the appellant. He stated that the individual remained in the car approximately five minutes, then exited the car. He stated that the appellant and her companion drove away. Officer Wesson stated that he and his partner, Bob Berry, followed this automobile. He stated that after driving around several blocks in downtown Birmingham, the appellant pulled her car over to a bus stop where an elderly black female was standing. He stated that he observed the appellant lean across her automobile to the passenger side, and that she had an envelope in her hand. He stated that the elderly female pedestrian came towards the car and leaned down, then straightened up with a shocked look on her face and walked away from the car. Officer Wesson further stated that this scenerio was one of a classic "pigeon drop confidence game" which is commonly used on the street to try and swindle people out of money. He further stated that the "pigeon drop" is commonly played on elderly persons. Officer Wesson testified that after the elderly woman walked away, the appellant pulled back out into traffic and sped off. He stated that they again followed the appellant over several blocks, then she again stopped. He stated that the appellant's companion, another black female, left the car and approached an elderly female standing outside of a local business. He stated that the elderly female walked away from appellant's companion and she returned to the car. He stated that the women left the scene and drove to Parisian's where appellant's companion exited the car and went in the store. The appellant left, drove around, and then returned to pick up her friend.
Officer Wesson testified that he had worked the Bunco division for approximately six years, and in his opinion the appellant had been attempting, or had perpetrated, a "flim-flam." He stated that when the appellant left Parisian's he radioed the head of the Bunco detail, Sergeant R.K. Hutchcraft. He further stated that as they were following the appellant he saw Sergeant Hutchcraft and another officer. He stated that he radioed to them a description of the car, the tag number, and his opinion of what had been taking place. He stated that Sergeant Hutchcraft pulled in behind the appellant and they followed her to the Hyatt House parking lot where the appellant pulled in and parked her car. He stated that Sergeant Hutchcraft pulled his car in behind the appellant. He stated that *Page 681 
Sergeant Hutchcraft and his partner, George Wiggins, got out of their car and approached the appellant who was still in her car. He further stated that he left the parking lot to try and find the appellant's victims. He stated that when he could not find them he returned to the Hyatt House and the appellant was in Sergeant Hutchcraft's police car. He further testified that it was his intention to detain the appellant to investigate the "flim-flam" activity he had observed. He also stated that he had observed this "pigeon drop" game played on many occasions.
George Wiggins testified that he was employed by the Birmingham Police Department. He stated that on February 23, 1983, he and Sergeant R.K. Hutchcraft responded to a call by Officer Wesson. He stated that he and Hutchcraft joined Wesson in following the appellant's car, after appellant had left Parisian's. He stated that she was driving a white Toyota with Ohio license plates. He stated that they followed the appellant to the Hyatt House parking lot, where she parked her car. Wiggins stated that he pulled up behind the appellant and that he and Hutchcraft exited the police car. He stated that he walked to the appellant's car and she began to roll the window down. He further stated that he showed the appellant his identification, told her who he was, and asked her to step out of the car.
Officer Wiggins testified that he stepped back to the rear of the door to the automobile and was watching the appellant as she exited the car. He stated that, as she was exiting the automobile, he observed a small "baggie" with a brownish green substance in it on the floorboard of the car next to her feet. He stated that he picked this "baggie" up, and from his experience as a police officer, he determined it to be marijuana. He further stated that he could smell a faint odor of burnt marijuana, which he was familiar with through his experience, coming from the appellant's car. He stated that he placed the appellant under arrest for violation of the Alabama Uniform Controlled Substances Act. Wiggins further testified that it was his intention upon approaching the appellant's car to investigate what Officer Wesson had earlier observed — "to ascertain what they were doing and . . . I.D. them." He also stated that he transported the appellant to the Birmingham City Jail.
Linda Knaffl testified that she was employed as a Birmingham Police Officer and that she was assigned to the City Jail. She stated that on February 23, 1983, at 1:45 p.m., she booked the appellant into jail. She stated that since the appellant was being charged with a felony, she was required to change clothes. She stated that during such procedure, the appellant had to remove her street clothes and put on a felony outfit — a white dress. She stated that she took the appellant into the nurse's office where they were alone. She stated that the appellant took her clothes off and as she did so Knaffl observed that nothing was hidden in the appellant's bra. Knaffl said she asked the appellant to pull her panties down, which appellant did, and at this time Knaffl observed something white in the appellant's vagina. She stated that she asked the appellant to remove this object, which she did, and it turned out to be a bottle containing peach-colored tablets. She stated that she asked the appellant if there was anything else inside her, to which the appellant responded that there was not. Officer Knaffl stated that she then told appellant to bend over, and she observed something else white. She stated that the appellant removed this object also and it was another bottle containing peach-colored pills.
 (A)
The trial judge denied appellant's motion to suppress this evidence. The first thing we must determine in evaluating the correctness of the trial judge's denial of the motion to suppress is whether the officers had reasonable suspicion to stop and question the appellant.
It is clear that stopping an automobile and detaining its occupants constitutes a seizure within the meaning of the *Page 682 
Fourth Amendment. Delaware v. Prouse, 440 U.S. 648,99 S.Ct. 1391, 59 L.Ed.2d 660 (1979); Vogel v. State, 426 So.2d 863
(Ala.Crim.App. 1980), affirmed, 426 So.2d 882 (Ala. 1982), cert. denied, 462 U.S. 1107, 103 S.Ct. 2456, 77 L.Ed.2d 1335;Johnson v. State, 406 So.2d 446 (Ala.Crim.App. 1981); Miller v.State, 423 So.2d 1377 (Ala.Crim.App. 1982); Kemp v. State,434 So.2d 298 (Ala.Crim.App. 1983). However, it is well recognized that police may constitutionally detain an individual for brief periods of questioning "on a reasonable suspicion, based on objective facts, that the individual is involved in criminal activity." Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868,20 L.Ed.2d 889 (1968); Brown v. Texas, 443 U.S. 47, 99 S.Ct. 2637,61 L.Ed.2d 357 (1979); Fennell v. State, 51 Ala. App. 23,282 So.2d 373, cert. denied, 291 Ala. 778, 282 So.2d 379 (1973); Vogel v.State, supra. In Terry v. Ohio, the United States Supreme Court formulated the concept of the investigatory stop based on reasonable suspicion. In certain instances, a police officer may stop a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest. "While the officer making the stop is not required to possess a level of knowledge amounting to probable cause, Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921,32 L.Ed.2d 612 (1972), he `must be able to point to specific and articulable facts which, taken together with rational inferences from those facts reasonably warrant investigating.'Terry v. Ohio, 392 U.S. at 21, 88 S.Ct. at 1880." Miller v.State, supra; Kemp v. State, supra; Kitchens v. State,445 So.2d 1000 (Ala.Crim.App. 1984).
Although Terry [v. Ohio, supra] was factually concerned with stops of pedestrians, the concept of the investigatory stop has been extended to stops of vehicles by subsequent decisions of the United States Supreme Court and the courts of this State. See Delaware v. Prouse, supra; United States v. Brignoni-Ponce,422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975); Minnifieldv. State, 390 So.2d 1146 (Ala.Crim.App.), cert. denied,390 So.2d 1154 (Ala. 1980); Miller v. State, supra; Kemp v. State, supra. Furthermore, an officer may in all situations assess the facts in light of his experience. Terry v. Ohio, supra.
After a thorough review of the officer's testimony at the suppression hearing, and a review of the authorities hereinabove relied upon, it is our judgment that the officers' observation of the appellant's activities, combined with his experience in this field, gave rise to more than an inarticulate "hunch" that something was amiss and established an objective basis for suspecting the appellant of criminal activity. Under the circumstances, we cannot say that it was unreasonable for the officers to make this investigatory stop.
 (B)
Next, we must determine whether Officer Wiggin's seizure of the marijuana from appellant was an illegal search and seizure.
"In dealing with police activity within the ambit of the Fourth Amendment, we are mindful that `searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment — subject only to a few specifically established and well-delineated exceptions.' Mincey v. Arizona, 437 U.S. 385,98 S.Ct. 2408, 57 L.Ed.2d 290 (1978)." Vogel v. State, supra. Such exceptions are: (1) in plain view; (2) with consent voluntarily, intelligently and knowingly given; (3) as incident to lawful arrest; (4) in "hot pursuit" or emergency situation; (5) where exigent circumstances exist coincidentally with probable cause; and (6) in "stop and frisk" situations. Danielsv. State, 290 Ala. 316, 276 So.2d 441 (1973); Baker v. State,340 So.2d 854 (Ala.Crim.App.), cert. denied, 340 So.2d 860
(Ala. 1976); Richardson v. State, 376 So.2d 205 (Ala.Crim.App. 1978), affirmed, 376 So.2d 228 (Ala. 1979); Vogel v. State, supra. A seventh exception is now recognized as well as in instances of inventory searches made to secure valuables or similar items. South Dakota v. Opperman, 428 U.S. 364,96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976). The plain view exception *Page 683 
to this rule "permits a warrantless seizure of evidence if the seizing officer (1) has prior justification for the intrusion, (2) comes upon the evidence inadvertently, and (3) immediately recognizes the objects discovered as evidence of wrongdoing."Herrin v. State, 349 So.2d 103 (Ala.Crim.App.), cert. denied,349 So.2d 110 (Ala. 1977); Myers v. State, 431 So.2d 1342
(Ala.Crim.App. 1982), cert. denied, 431 So.2d 1346 (Ala. 1983);Kitchens v. State, supra. See also Coolidge v. New Hampshire,403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). Furthermore, "it is not necessary that the seizing officer be convinced beyond a reasonable doubt as to the incriminating nature of the evidence discovered. The evidence needs only to raise the probability that criminal activity is afoot." Herrinv. State, supra; Yielding v. State, 371 So.2d 951
(Ala.Crim.App.), cert. denied, 371 So.2d 962 (Ala. 1979); Myersv. State, supra; Kitchens v. State, supra.
It is clear from the evidence in this case that Officer Wiggins was justified in approaching the appellant's vehicle. It is equally clear that the marijuana was discovered inadvertently. Officer Wiggins was merely watching the appellant exit her car when he saw the "baggie" containing plant material on the floorboard beside the appellant's feet. The third prong of the plain view exception is also satisfied. Officer Wiggins testified that he had seen marijuana many times in his experience as a police officer. He also stated that he could smell a faint odor of burnt marijuana coming from the automobile and that, in his experience as an officer had smelled burning marijuana on other occasions. He stated that in his judgment, this plant material, which was in a "baggie," appeared to be marijuana.
We find, after a review of this evidence, that the marijuana was in plain view when seized and that as a result of this proper seizure and arrest, the subsequent finding of pills in the appellant's person was both proper and justified. SeeHastings v. State, 439 So.2d 204 (Ala.Crim.App. 1983).
The trial judge properly denied the appellant's motion to suppress the evidence.
 II
The appellant contends that the trial court erred in allowing the State to exclude blacks from the jury and as a result a new trial should be granted.
 "In Swain v. Alabama, 380 U.S. 202 [85 S.Ct. 824, 13 L.Ed.2d 759] (1965), the Supreme Court recognized that a defendant's constitutional rights might be violated if there existed a pattern of deliberate and continued exclusion of blacks from juries by the State. However, the court also observed that a defendant bears a heavy burden in attempting to demonstrate systematic discrimination of constitutionally significant magnitude."
Dewhart v. State, 455 So.2d 167 (Ala.Crim.App. 1984); Brooks v.State, 471 So.2d 507 (Ala.Crim.App. 1984).
The Constitution does not require "an examination of the prosecutor's reason for the exercise of his challenge in any given case." Swain v. Alabama, supra; Walker v. State,428 So.2d 139 (Ala.Crim.App. 1982). Further, the fact that a prosecutor used all of his strikes to exclude blacks from the jury does not constitute proof that there was a systematic exclusion of blacks. Watts v. State, 53 Ala. App. 518,301 So.2d 280 (1974); McCray v. State, 395 So.2d 1057 (Ala.Crim.App. 1980), cert. denied, 395 So.2d 1062 (Ala. 1981); Carpenter v.State, 404 So.2d 89 (Ala.Crim.App. 1980), writ quashed,404 So.2d 100 (Ala. 1981); Walker v. State, supra. There is a presumption that the prosecutor is utilizing the State's strikes in a fair and impartial manner. Swain v. Alabama, supra; Walker v. State, supra; Dobard v. State, 435 So.2d 1338
(Ala.Crim.App. 1982), affirmed, 435 So.2d 1351 (Ala. 1983), cert. denied, ___ U.S. ___, 104 S.Ct. 745, 79 L.Ed.2d 203.
In this case, the appellant has failed to satisfy the burden placed upon her by Swain. Her rights were not violated when the State used its strikes to exclude *Page 684 
blacks from the jury. Williams v. State, 375 So.2d 1257
(Ala.Crim.App.), cert. denied, 375 So.2d 1271 (Ala. 1979);Flowers v. State, 402 So.2d 1088 (Ala.Crim.App.), cert. denied,402 So.2d 1094 (Ala. 1981); Carpenter v. State, supra; Allen v.State, 414 So.2d 163 (Ala.Crim.App. 1982); Walker v. State, supra; Dobard v. State, supra.
 III
The appellant contends that the trial court erred in supplying the jury with a verdict form and giving jury instructions which authorized the jury to set a fine of up to $25,000 in each case. She argues that this action by the trial judge was prejudicial to her cause.
It should be noted that the jury, upon finding the appellant guilty, assessed a fine of $10,000 for the possession of tablets containing pentazocine, and $5,000 for the possession of marijuana. At the sentencing hearing, the trial judge treated these fines as surplusage relying on the fact that §§15-18-40 and 15-18-41, Code of Alabama 1975, were repealed by Acts 1977, No. 607, p. 812, § 9901, as amended, effective January 1, 1980. This former code section allowed the jury to fix and determine the amount of fines in a prosecution by indictment. Ala. Code § 20-2-70 (1975), authorizes a fine to be imposed in drug possession cases. However, this section is silent as to whether the judge or jury shall impose the fine. The imposition of a fine in such cases is entirely within the discretion of the trial judge. His instructions were, in effect, asking for a recommendation. Consequently, we find no error in the trial judge's actions, neither in authorizing the jury to impose the fine, nor in treating such a fine as surplusage. See Osner v. State, 54 Ala. App. 520, 310 So.2d 241
(1974), cert. denied, 293 Ala. 769, 310 So.2d 247 (1975), cert. denied, 423 U.S. 871, 96 S.Ct. 137, 46 L.Ed.2d 101 (1975);Jordan v. State, 411 So.2d 816 (Ala.Crim.App. 1981). Furthermore, the actions of the trial judge were in no way prejudicial to the appellant's case in view of the fact that there was ample evidence to support a verdict of guilty by the jury.
 IV
The appellant contends that the trial court erred in imposing two sentences on the appellant upon the jury finding the appellant guilty on each charge of possession. The appellant argues that the Alabama Uniform Controlled Substances Act at §20-2-70 (a), Code of Alabama 1975, does not sanction basing multiple prosecutions or sentences on the mere fact that several types of drugs were possessed at one point in time. The issue which results is whether the two different types of drugs found in the appellant's possession and under the control of the appellant constituted a single offense of possession under § 20-2-70 (a), thereby requiring only a single sentence, or two separate possessions, which would justify the trial court's action in imposing two separate sentences. A factor which further complicates this issue is that the appellant was charged in separate indictments for the possession of the illegal drugs.
The appellant argues that she possessed all of the controlled substances named in the indictments at the same time and place, relying heavily on Vogel v. State, 426 So.2d 863 (Ala.Crim.App. 1980), affirmed as to other issues, writ quashed as to instant issue, 426 So.2d 882 (Ala. 1982), cert. denied, 462 U.S. 1107,103 S.Ct. 2456, 77 L.Ed.2d 1335. The State, on the other hand, argues that Vogel does not apply in this case because the drugs were not found at one point in time and in one place. We disagree with the State's argument in this instance.
The Alabama cases have long recognized that constitutional double jeopardy provisions, U.S. Const. Amend. V and Ala. Const., Art. I, § 9, prohibit the splitting of a single criminal act so as to justify multiple prosecutions for the identical criminal behavior.
 "A single crime cannot be split up, or divided, into two or more offenses. Hurst v. State, 86 Ala. 604, 6 So. 120. *Page 685 
Neither can a series of charges be based upon the same act. Gunter v. State, 111 Ala. 23, 20 So. 632; Clayborne v. State, 103 Ala. 53, 15 So. 842; Crosswhite v. State, 31 Ala. App. 181, 13 So.2d 693."
Baldwin v. State, 47 Ala. App. 136, 251 So.2d 633 (1971); Freev. State, 455 So.2d 137 (Ala.Crim.App. 1984).
 "The State is without authority to split up one crime and prosecute it in parts. Savage v. State, 18 Ala. App. 299, 92 So. 19, Everage v. State, 14 Ala. App. 106, 71 So. 983; Moore v. State, 71 Ala. 307; Claude Crosswhite v. State, ante [31 Ala. App.] p. 181, 13 So.2d 693."
Lynn v. State, 31 Ala. App. 216, 14 So.2d 259 (1943); Free v.State, supra.
 "Sometimes as a part of a single transaction more than one offense is charged to have been committed. If a person does a single act which results in the injury or death of more than one person, only one offense can be fastened upon him. But if in that occurrence he shoots different persons by different discharges of his firearm, an offense can be fastened separately as to each person so injured or killed, although there was but one transaction, and upon a trial for one such offense the whole transaction is admissible. Smith v. State, 88 Ala. 73, 76, 7 So. 52; Cheek v. State, 38 Ala. 227; Gunter v. State, 111 Ala. 23, 20 So. 632; Grissett v. State, 241 Ala. 343, 2 So.2d 399."
Kilpatrick v. State, 257 Ala. 316, 59 So.2d 61 (1952); Vogel v.State, supra; Free v. State, supra.
In Green v. State, 22 Ala. App. 536, 117 So. 607 (1928), the Court of Appeals stated:
 "We do not hold that a person cannot be guilty of two or more possessions of whisky at one and the same time. But we do hold that where the premises are the same and the time is the same, the possession of all the whisky on the premises of which the owner has a guilty knowledge, and of which he has control, is one possession and may not be split up into numerous offenses. In the case of Holland v. State, 21 Ala. App. 520, 109 So. 885, which decision was approved in Holland v. State, 215 Ala. 106, 109 So. 886, this court said:
 "`If there was whisky in the smoke house, some just below the house under a log, and a quart lying in the water under a tree, and all of this was in the defendant's possession at the same time, there was only one possession.'"
Vogel v. State, supra.
Further, in the case of Whitaker v. State, 21 Ala. App. 114,105 So. 433 (1925), the Court stated:
 "Whether the whisky was in one place or a dozen places, if the possession was in the defendant and at the same time, the defendant could only be prosecuted for one offense. The defendant is not prosecuted on a charge of possessing any particular amount or brand of whisky, but the offense is complete when it is proven that he possessed prohibited liquor, and such prosecution covers all the whisky he possessed at that time."
Moreover, this court stated in Vogel that the possession of controlled substances "renders a defendant guilty of a felony and not guilty of several felonies based upon how many drugs are simultaneously within the control of the defendant." Following the case law set out above, once the presence of the first controlled substance is proven, the offense is complete. "By applying the principles developed in our case law to the plain language of § 20-2-70 (A), we thus find that thepossession is the criminal offense, and our section does not sanction basing multiple prosecutions or sentences on the mere fact that several types of drugs were so possessed at one point
in time." Vogel v. State, supra; Tice v. State, 475 So.2d 589
(Ala.Crim.App. 1984).
Applying the principles set out above to the facts of this case, we find that the trial court erred in imposing separate sentences on the appellant. In this case, the police officers had the appellant in their constant custody or control from the moment they discovered the bag of marijuana on the floorboard beside her feet. Such *Page 686 
control over the appellant was never relinquished. She had the pills secreted on her person, and thus, in her possession, at the same point in time. We find no difference in the fact that these pills were not discovered until later when she was searched at the City Jail, than if they had been discovered in her purse while she was at the scene, or in the glove compartment, or, for that matter, in the trunk of her car.
We therefore hold that the trial judge erred in imposing multiple sentences because, as herein noted, there was but onepossession. We therefore affirm the conviction of this appellant but inasmuch as the trial court imposed two separate sentences because there were two offenses charged in the two indictments, a new sentencing hearing is required. Only one sentence may be imposed under the facts of this case. The two sentences are therefore set aside and vacated and this cause is remanded for proper sentence. The trial court is hereby directed to impose only one sentence for the possession of the two drugs as herein directed. Therefore, this cause is remanded to the trial court for imposition of a single sentence. The court is also directed to prepare a return showing such sentence and to file same in this court after holding the hearing with the appellant and her attorney present.
REMANDED FOR PROPER SENTENCE.
All the Judges concur.