516 So.2d 775 (1985)
Arthur Edward DARBY
v.
STATE.
8 Div. 181.
Court of Criminal Appeals of Alabama.
October 22, 1985.
Rehearing Denied May 27, 1986.
*777 William N. Clark and Douglas H. Scofield of Redden, Mills & Clark, Birmingham, for appellant.
Charles A. Graddick, Atty. Gen., and Jean Alexander Webb, Asst. Atty. Gen., for appellee.
TAYLOR, Judge.
Arthur Edward Darby was separately indicted for unlawfully selling cocaine and for trafficking in cocaine. He was found guilty by a jury on both counts and was subsequently sentenced under the Habitual Felony Offender Act to 21 years on the trafficking charge and 10 years on the selling charge. The sentences were ordered to run consecutively. In addition, the appellant was fined $50,000 on the trafficking count and $10,000 on the selling charge.
Darby's arrest resulted from a joint undercover operation of the Alabama Bureau of Investigation and the Sheffield Police Department. One Walter Barner agreed to cooperate with the authorities in exchange for their promise not to prosecute him in connection with an automobile theft case, and he was the buyer of the cocaine.
The appellant and Barner had formulated a plan to defraud an insurance company by reporting as stolen a 1982 Lincoln Continental automobile, supposedly owned by Barner. In fact, Barner never actually owned the automobile; the appellant had transferred legal title in the automobile to Barner so that he could obtain insurance on the car, but he never paid Darby anything for the vehicle. According to the plan, Barner was to report the automobile as stolen, file a claim with the insurance company, and then split the proceeds with the appellant. The scheme fell apart, however, when A.B.I. agent B.A. Richardson discovered that the vehicle had not actually been stolen. Under questioning by Richardson, Barner confessed that the whole story had been fabricated to obtain the insurance money.
Barner then offered to help the authorities prove a drug case against Darby, the appellant here, if no action would be brought against him in the automobile case. A.B.I. Agent Brown testified that when informed of Barner's offer, he felt it unnecessary to verify accusations that Darby was a drug dealer because he knew Darby's reputation in the community for selling illegal narcotics. Pursuant to the agreement, Barner subsequently arranged to purchase cocaine from appellant Darby.
On February 3, 1984, Barner telephoned Darby to find out where to meet Darby to buy the cocaine. Darby did not suggest a meeting place at that time, but told Barner to telephone his paging service later that day and he would call him back to let Barner know where the transaction would occur. During this conversation, which was recorded by Barner, drugs were not specifically discussed. After making the phone call, Barner drove to the Sheffield Police Station to notify the authorities that the sale would occur soon.
At the police station, officers conducted a search of Barner and attached a transmitter to his chest so that they could hear and record any conversation that occurred during the drug transaction. Barner was instructed to use the code phrase, "here's the money," after he had purchased the drugs so that the agents could move in for the arrest. At this time, police officers also searched Barner's automobile for contraband.
After being given $1,900 with which to make the purchase, Barner left the police *778 station to telephone Darby. Followed by Agent Richardson and Officer Aycock, Barner drove to a telephone booth where he, with Agent Richardson standing beside him, attempted to use the telephone but found that it was out of service. The two men returned to their respective cars and drove to another phone booth in front of a Zippy Mart store. Again, with Richardson standing beside him, Barner telephoned the appellant's paging service and gave it the number of the phone booth outside the Zippy Mart. Shortly thereafter, Barner received a telephone call from the appellant. Darby told Barner to meet him at the Southern Touch Lounge, which was located across the street from where Barner was calling. Agent Richardson, fearing that the appellant was already at the lounge and might see him, ran back to his own car to avoid being seen.
After hanging up, Barner returned to his car, and followed by Richardson and Aycock, drove to a nearby service station. Barner talked with Richardson for a moment, then drove to the lounge to meet the appellant. Agent Richardson followed on foot, concealing himself so that he could see into the parking lot of the lounge without himself being detected.
Barner got out of his car and walked up to the door of the lounge, peered through the window to see if Darby was inside, and seeing no one, returned to his car to wait for him. A moment later, Darby arrived, parked his car, and got into Barner's automobile.
Barner testified that the two talked for a few minutes about the insurance fraud scheme before he purchased from the appellant a green package containing cocaine. The transcript of the conversation, parts of which were unintelligible, reveal that the two men did discuss matters relating to the automobile swindle for several minutes, but there was no intelligible part of the conversation in which cocaine was specifically mentioned. Moreover, the portions of the conversation immediately preceeding the time that Barner handed the money to the appellant were especially unintelligible.
Agent Brown and Officer Jones, who had arrived at the scene a few minutes before the appellant, were carefully monitoring the conversation. Brown, upon hearing the prearranged phrase, "here's the money," radioed Agent Richardson that the sale had occurred. With his pistol drawn, Richardson walked up to the car and ordered the two men out of the vehicle. Richardson "patted down" Darby for weapons, handcuffed him, and then put him in the back seat of the police car. While this was occuring, Officer Aycock searched Barner and found a green bag containing white powder in Barner's pocket. Once the preliminary search was completed, both Barner and Darby were taken to the state trooper's officer in Muscle Shoals.
Upon arriving at the station, Agent Brown informed the appellant of his rights and conducted a thorough inventory search. A total of $12,000 was found in the appellant's pockets. During the search the appellant removed his jacket and placed it on a nearby chair. When the jacket was later searched, an additional $1,900 in cash was discovered. An envelope containing white powder was also found in the coat pocket, as well as a brown glass vial containing white powder, a 35-millimeter film canister containing white powder, and an implement commonly known as a "coke spoon." A later analysis of these substances by state criminalist Joseph Wallace revealed that the white powder was cocaine.

I
The appellant first challenges the sufficiency of the indictment for trafficking. Specifically, he contends that because the indictment merely charged him with knowingly possessing "28 grams or more of cocaine," without specifying the exact amount of cocaine, he was alleged to have had in his possession, the indictment was unconstitutionally vague. The statute under which the appellant was indicted, § 20-2-80(2), Code of Alabama 1975, provides:
"Any person who knowingly sells, manufactures, delivers, or brings into *779 this state, or who is knowingly in actual or constructive possession of, 28 grams or more of cocaine or of any mixture containing cocaine, described in Section 20-2-25(1), is guilty of a felony, which felony shall be known as `trafficking in cocaine,' If the quantity involved:
a. Is 28 grams or more, but less than 200 grams, such person shall be sentenced to a mandatory minimum term of imprisonment of three calendar years and to pay a fine of $50,000.00.
b. Is 200 grams or more, but less than 400 grams, such person shall be sentenced to a mandatory minimum term of imprisonment of five calendar years and to pay a fine of $100,000.00.
c. Is 400 grams or more, such person shall be sentenced to a mandatory minimum term of imprisonment of 15 calendar years and to pay a fine of $250,000.00."
"The function of the indictment is to inform the accused of the crime with which he is charged, so that he may prepare a defense if one is available." Ex Parte Washington, 448 So.2d 404, 407 (Ala.1984). This court has previously held that "an indictment which follows the language of a statute is sufficient to apprise the appellant of the charges against him, and to allow him to prepare a defense." Copeland v. State, 455 So.2d 951, 956 (Ala.Cr.App.), cert. denied, 455 So.2d 956 (1984). The appellant argues that in this instance, however, the indictment did not sufficiently track the statute, because it failed to specify the exact quantity of cocaine he was alleged to have had in his possession. He bases his argument on the fact that the trafficking statute is divided into three subsections, the second and third allowing a greater fine and term of imprisonment as the quantity of the controlled substance possessed increases. We find this argument unpersuasive.
"An indictment must contain the elements of the offense charged." Hardy v. State, 409 So.2d 996, 1001 (Ala.Cr.App. 1982). (Emphasis supplied.) The legislature has defined the offense of trafficking in cocaine as possession of "28 grams or more of cocaine or of any mixture containing cocaine." § 20-2-80(2), Code of Alabama 1975. Subparagraphs (a), (b), and (c) are not "elements of the offense," but rather relate to minimum sentencing requirements to be used in the event that the accused is found guilty of trafficking in cocaine. We find, therefore, that the indictment charging the appellant with knowingly possessing 28 grams or more of cocaine, or a mixture thereof, was sufficient.
The appellant also contends that, because neither the jury verdict nor the indictment specified the exact amount of cocaine he possessed, the trial judge improperly invaded the province of the jury by making an independent finding of fact as to the amount of cocaine.
The appellant is correct in his assertion that in every conviction for trafficking in cocaine there must be a finding as to the minimum quantity of cocaine possessed by the accused. Such a finding is a prerequisite to sentencing, since the trial judge must know the amount of cocaine possessed by the accused before he is able to determine which minimum sentencing provision of § 20-2-80(2), Code of Alabama 1975, applies. The question to be resolved then, is whether the minimum amount of cocaine possessed by an accused is a matter to be decided by a jury, or, whether it is a matter within the dominion of the trial court pursuant to its sentencing authority.
Historically, it has been the function of the jury to determine those issues of fact which bear upon the guilt or innocence of the accused. Fuller v. State, 43 Ala.App. 632, 198 So.2d 625 (1966). A person is guilty of the offense of trafficking in cocaine when he is found to have knowingly been in possession of 28 grams or more of cocaine. § 20-2-80(2), Code of Alabama 1975. For the offense of trafficking, whether the defendant is in possession of 28.1 grams or 1,000 grams has no bearing upon his guilt. Determining the exact amount of cocaine in excess of 28 grams that the defendant possessed is only relevant to determine the proper sentence to be imposed.
*780 It is undisputed that the trial judge has the authority to make certain findings of fact to effectuate proper sentencing of a defendant. In Hosey v. State, 344 So.2d 1230, 1233 (Ala.Cr.App.), cert. denied, 344 So.2d 1235 (1977), this court stated, "The range of outside matters entitled to consideration by the trial judge in fixing punishment is extremely broad." Rule 6(b)(2), Ala.Temp.Rules of Criminal Procedure, gives the trial judge the authority to make findings of fact at the sentencing hearing:
"Disputed facts shall be determined by the preponderance of evidence. Evidence may be presented by both the state and the defendant as to any matter that the court deems probative on the issue of sentence. Such matters may include, but are not limited to, the nature and circumstances of the offense, the defendant's character, background, mental and physical condition and history, the gain derived by the defendant or loss suffered by the victim as a result of defendant's commission of the offense, and any other facts in aggravation or mitigation of the penalty. Any evidence that the court deems to have probative value may be received, regardless of its admissibility under the rules of evidence. The presentence report, if submitted, shall be considered as part of the evidence." (Emphasis supplied.)
A better practice might be for the indictment to specify the paragraph of the trafficking statute alleged to have been violated in terms of quantity. A better practice might be for the jury verdict form to say that, for example, "We, the jury, find the defendant guilty of possessing 28 grams or more, but less than 200 grams, of cocaine." Nevertheless, Rule 6(b)(2), A.Temp.R. Crim.P., permits the trial judge to make such a finding pursuant to his power to determine "any matter that the court deems probative on the issue of sentence." We find, therefore, that the trial court's determination of the precise quantity of cocaine possessed by the appellant, when used solely for purposes of determining the appropriate sentence range, was correct and allowable and did not deny the appellant his right to trial by jury.

II
The appellant also contends that the packages of cocaine allowed into evidence against him were obtained as a result of an illegal search by police and, therefore, should have been excluded by the trial court. The appellant asserts that a search which is conducted without a warrant issued on probable cause is presumptively unreasonable. While this presumption may apply to most warrantless searches, it does not apply to inventory searches. The United States Supreme Court expressly stated in Illinois v. Lafayette, 462 U.S. 640, 643, 103 S.Ct. 2605, 2608, 77 L.Ed.2d 65 (1983), that "the justification for [inventory] searches does not rest on probable cause, and hence the absence of a warrant is immaterial to the reasonableness of the search."
Evidently, Darby's actual complaint is that the arrest upon which the inventory search was predicated was made without probable cause to believe that he had committed a crime. If the police lacked probable cause to believe the appellant had committed a crime then the inventory search which was conducted as a result of that illegal arrest would itself be illegal and any evidence discovered during the search would be inadmissible.
A police officer may properly arrest an individual without a warrant when he has reasonable cause to believe that the person to be arrested has committed, or is about to commit, a felony. § 15-10-3(3), Code of Alabama 1975; Seals v. State, 282 Ala. 586, 213 So.2d 645 (1968); Aaron v. State, 54 Ala.App. 71, 304 So.2d 625 (1974). The appellant contends that the police lacked the requisite probable cause to arrest him because the arrest was based upon information obtained from an informant whose veracity, reliability, and basis of knowledge were unknown. While disavowing his intention to do so, appellant Darby is essentially urging this court to apply the now abandoned Aguilar-Spinelli rule. [Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); Spinelli *781 v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).] The United States Supreme Court overruled the Aguilar line of cases as establishing the minimum standard for making a finding of probable cause in Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1982).
In both Aguilar and Spinelli, the United States Supreme Court addressed only the issue of whether information obtained from an unidentified informant was sufficiently reliable. The policy underlying the court's decision in those cases was based largely upon a defendant's constitutional right under the 6th Amendment to confront his accuser. Such a policy has little application where, as here, the informant is an active participant and later testifies at trial.
Under the "totality of the circumstances" analysis reaffirmed in Gates, supra, if applied to a non-confidential informant case such as this, the information obtained from Walter Barner was sufficient to meet the test.
In Jones v. United States, 362 U.S. 257, 269-270, 80 S.Ct. 725, 735, 4 L.Ed.2d 697 (1960), the Court observed:
"In testing the sufficiency of probable cause for an officer's action even without a warrant, we have held that he may rely upon information received through an informant, rather than upon his direct observations, so long as the informant's statement is reasonably corroborated by other matters within the officer's knowledge. Draper v. United States, 358 U.S. 307 [79 S.Ct. 329, 3 L.Ed.2d 327]. We there upheld an arrest without a warrant solely upon an informant's statement that the defendant was peddling narcotics as corroborated by the fact that the informant's description of the defendant's appearance, and of where he would be on a given morning (matters in themselves totally innocuous) agreed with the officer's observations. We rejected the contention that an officer may act without a warrant only when his basis for acting would be competent evidence upon a trial to prove defendant's guilt. Quoting from Brinegar v. United States, 338 U.S. 160, 172, 69 S.Ct. 1302, 1309, 93 L.Ed. 1879, we said that such a contention `goes much too far in confusing and disregarding the difference between what is required to prove guilt in a criminal case and what is required to show probable cause for arrest or search....'"
Since probable cause existed to make the arrest, the appellant's motion to suppress was properly denied.

III
Appellant also asserts that the trial court erred in denying his motion for return of property. The appellant contends that the state failed to establish, as required by § 20-2-93(d)(1), Code of Alabama 1975, that the money taken from him was connected in any way with an illegal drug transaction. We decline to address this issue, since forfeiture proceedings are civil in nature and for that reason are beyond the scope of our review. See, Berryhill v. State, 372 So.2d 355 (Ala.Civ.App.1979); Kirkland v. State ex rel. Baxley, 340 So.2d 1121 (Ala.Civ.App.1976), cert. denied, 340 So.2d 1127 (Ala.1977).

IV
The appellant next contends that the trial court committed reversible error by allowing the state to introduce evidence of the appellant's prior bad acts. During the course of the trial, Walter Barner testified that on February 3, 1984, he purchased a package containing white powder from Darby. Over the appellant's objection, Barner also testified that he had purchased similar packages of white powder from Darby in the past, and that upon these occasions, Darby had represented the white powder to be cocaine. The appellant argues that this testimony concerning prior drug sales should have been excluded since such evidence was irrelevant and unduly prejudicial.
Generally, it is true that evidence of a defendant's bad character or of prior illegal conduct is inadmissible for the purpose of showing that the accused is a bad person, or that he behaved in conformity with his *782 bad character on the occasion in question. McDonald v. State, 57 Ala.App. 529, 329 So.2d 583 (1975). Such evidence is excluded not because it is irrelevant, but rather because it is unduly prejudicial. C. Gamble, McElroy's Alabama Evidence, § 69.01(1) (3d ed. 1977). There are, however, several well recognized exceptions to this general exclusionary rule. Evidence of prior bad acts is frequently admitted to show the accused's motive, intent, scienter, identity, plan, scheme, or system. Pope v. State, 365 So.2d 369 (Ala.Cr.App.1978); C. Gamble, McElroy's Alabama Evidence, § 69.01 (3d ed. 1977).
The state, in this instance, contends that it offered evidence of the appellant's previous sales of cocaine for the limited purpose of showing the appellant's plan, design, scheme, or on-going business system to engage in the sale of illegal drugs. Judicial inquiry does not end there, however. "Not only must it be determined that the other offenses are material and relevant to an issue other than the character of the accused and fall within an exception to the exclusionary rule, but the probative value must not be substantially outweighed by undue prejudice." Averette v. State, 469 So.2d 1371, 1373-74 (Ala.Cr.App.1985).
Our recent decision in Dawkins v. State, 455 So.2d 220 (Ala.Cr.App.1984), is dispositive of this issue. In that case, David Dawkins was convicted of selling cocaine in violation of the Alabama Uniform Controlled Substances Act. On appeal to this court, Dawkins alleged, as does the appellant herein, that the trial court erred in allowing the state to introduce evidence of a prior sale of cocaine by him. We stated:
"In Woods v. State, 437 So.2d 636 (Ala. Crim.App.1983), evidence of another crime was received to show appellant's `plan, design, scheme, or on-going business system to engage in illegal drug transaction.' 437 So.2d at 637. We think that the other illegal drug sale close in time to this one was admissible. Here, there are additional facts connecting the two: both buyer and location of the sale are the same as in the other case. The evidence was obviously admissible."
Id., at 222. See also, Malone v. State, 452 So.2d 1386 (Ala.Cr.App.1984).
In the present case, the record indicates that purchases of cocaine had been made by the same buyer, Walter Barner, and that the last such purchase had occurred only three months earlier. Accordingly, we hold that the evidence of these prior sales was properly admitted in evidence for the purpose of showing the appellant's plan, scheme, or on-going business system to engage in the sale of illegal drugs.

V
Relying on United States v. Ross, 719 F.2d 615 (2d Cir.1983), the appellant also argues that the trial court erred in denying his requested jury charge relating to the distinction between L-cocaine and D-cocaine.
Defendant's requested charge no. 35 stated:
"The court instructs the jury that unless you are convinced by the evidence beyond a reasonable doubt and to a moral certainty that the substances allegedly sold and possessed by the defendant were `L-cocaine' and opposed to `D-cocaine,' or that the substances were chemically equivalent or identical to L-cocaine, then you must return a verdict of not guilty as to both charges made against the defendant."
The appellant's requested charge is premised upon a defense that has become known as the "cocaine isomer strategy." Id., at 617. The crux of the appellant's argument is that there are eight different forms of cocaine and that of these eight, only one, L-cocaine, fits the statutory definition of a controlled substance. Section 20-2-25(1), Code of Alabama 1975, which lists the controlled substances encompassed by schedule II reads:
"Any of the following substances, except those narcotic drugs listed in other schedules, whether produced directly or indirectly by extraction from substances of vegetable origin or independently by means of chemical synthesis or by combination *783 of extraction and chemical synthesis:
"....
"d. Coca leaves and any salt, compound, derivative or preparation of coca leaves and any salt, compound, derivative or preparation thereof which is chemically equivalent or identical with any of these substances, but not including decocainized coca leaves or extractions which do not contain cocaine or ecgonine."
The case law is in agreement that, of the eight isomers of cocaine, only L-cocaine is derived from coca leaves. See, Ross, supra; United States v. Francesco, 725 F.2d 817 (1st Cir.1984). The appellant herein argues that the remaining seven isomers of cocaine, including D-cocaine, are not illegal because they are not "chemically equivalent or identical" to any of the substances listed in § 20-2-25(1)(d).
While there is some support for appellant's argument, there also exists much authority to the contrary.
In United States v. Scott, 725 F.2d 43 (4th Cir.1984), the isomer theory was summarily rejected:
"When confronted with the [isomer] defense, we, like other courts, have been unwilling to accept the basic premise of the theory that only cocaine derived from coca leaves (L-cocaine) is within the statutory prohibition since the statutory definition expressly comprehends both cocaine derived from coca leaves and its chemical equivalent."
Id., at 45 (emphasis in original). Accord, People v. Aston, 208 Cal.Rptr. 754 (Cal.Ct. App.), rev'd, 39 Cal.3d 481, 216 Cal.Rptr. 771, 703 P.2d 111 (1985); Commonwealth v. Slyman, 334 Pa.Super. 415, 483 A.2d 519 (1984); United States v. Francesco, 725 F.2d 817 (1st Cir.1984).
Our statute, like the federal statute construed in United States v. Scott, supra, not only specifically includes within the scope of its prohibition possession of any substance derived from coca leaves, but it also prohibits possession of "chemically equivalent" substances that are produced "independently by means of chemical synthesis."
"A fundamental rule of statutory construction is to ascertain and give effect to the intention of the legislature as expressed in a statute." State v. Morrow, 276 Ala. 385, 388, 162 So.2d 480, 482 (1964). "Although criminal statutes must be strictly construed in favor of those sought to be subject to their operation, the interests of justice demand that criminal statutes not be construed irresponsibly. In construing a statute this court has an obligation to ensure that such construction is in line with common sense and practicality of application." Donley v. City of Mountain Brook, 429 So.2d 603, 607 (Ala.Cr.App.1982). See, also, Nobis v. State, 401 So.2d 191 (Ala.Cr. App.), cert. denied, 401 So.2d 204 (1981).
In a similar vein, this court noted in Mayberry v. State, 419 So.2d 262, 265 (Ala. Cr.App.1982) that "the construction [of a statute] should not defeat the obvious intent of the legislature, [citation omitted] or destroy the spirit and force of the law the legislature intended to enact." See, also, § 13A-1-6, Code of Alabama 1975. "It was the intent of our legislature to prevent drug abuse, control drug possession, and generally standardize Alabama's drug laws in enacting the Controlled Substances Act." Warren v. State 52 Ala.App. 35, 38, 288 So.2d 817, 820, rev'd on other grounds, 292 Ala. 71, 288 So.2d 826 (1973). Section 20-2-25(1)(d), Code of Alabama 1975, was intended to prohibit the production, sale, or possession of the drug commonly known as cocaine. Joseph Wallace, a criminalist with the Alabama Department of Forensic Sciences, testified that the white, powdery substance taken from the appellant was cocaine. In the absence of evidence to the contrary, words must be construed according to their ordinary and common meaning. Walker v. State, 428 So.2d 139 (Ala.Cr. App.1982).
Since the defendant's requested charge was an incorrect statement of law, we hold that the trial court's refusal of this charge was correct and did not constitute reversible error. Kuczenska v. State, 378 So.2d 1182 (Ala.Cr.App.1979).

*784 VI
The appellant next alleges that the trial judge committed reversible error in refusing one of his requested charges to the jury. Appellant's requested charge no. 11, which was refused by the court, stated:
"The court instructs the jury that reasonable doubt may arise out of a lack of evidence as well as from the evidence itself. If after consideration of all the evidence, you have a reasonable doubt as to the guilt of the defendant, it will be your duty to acquit him."
As pointed out by the appellant, our Court of Appeals in Stafford v. State, 33 Ala.App. 163, 168, 31 So.2d 146, 150 (1947), expressly held that "it is proper to charge, and error to refuse to charge, that a reasonable doubt may arise either from the evidence or want of evidence." But there are also Alabama cases in which denial of a similar charge by the trial court was held not to constitute error. Chastain v. State, 256 Ala. 11, 54 So.2d 628 (1951).
Much confusion has existed regarding the refusal of jury charges on reasonable doubt arising out of a lack of evidence. See, e.g., Smiley v. State, 53 Ala.App. 268, 299 So.2d 312 (Ala.Cr.App.), cert. denied, 292 Ala. 750, 299 So.2d 316 (1974); Parson v. State, 39 Ala.App. 142, 96 So.2d 206 (1957). The issue was finally clarified by the Alabama Supreme Court in Lambeth v. State, 380 So.2d 923 (Ala.1979). The court held that if the jury is presented with a discussion of the reasonable doubt standard as applied to evidence in its totality, then failure of the trial court to give instructions as to the application of the standard to the lack of evidence is not reversible error. Lambeth, 380 So.2d at 925; see also, Shields v. State, 397 So.2d 184 (Ala.Cr.App.1981).
In the case sub judice, the record indicates that the trial judge substantially and fairly discussed the reasonable doubt standard as applied to the evidence in its totality during its oral instructions to the jury. Therefore, the refusal by the trial court of appellant's requested charge no. 11 was not reversible error.
We have reviewed the other issues presented by the appellant, and, after careful consideration, find that they are without merit. The judgment of the circuit court is affirmed.
AFFIRMED.
All the Judges concur.

ON REHEARING
TAYLOR, Judge.
The appellant was arrested for selling a quantity of cocaine in excess of twenty-eight grams, and was charged with trafficking in cocaine, a violation of § 20-2-80(2), Code of Alabama 1975. Several hours after his arrest, his coat was searched and additional cocaine was discovered. This quantity was less than twenty-eight grams, so he was also charged with possessing cocaine, a violation of § 20-2-70(a), Code of Alabama 1975. He received consecutive sentences of 21 years' imprisonment and a $50,000 fine for the trafficking conviction, and 10 years' imprisonment and a $10,000 fine for the possession conviction. On rehearing, the appellant argues, "A person who possesses in excess of 28 grams of cocaine, or a substance containing cocaine, should not be subject to multiple punishment on the sole basis that he failed to `sell' all of the cocaine he allegedly possessed."
"The Alabama cases have long recognized that constitutional double jeopardy provisions, U.S. Const. Amend. V and Alabama Const., Art. I, § 9, prohibit the splitting of a single criminal act so as to justify multiple prosecutions for the identical criminal behavior." Smith v. State, 472 So.2d 677, 684 (Ala.Cr.App.1984). This court has previously held that the simultaneous possession of several different types of controlled substances authorizes only a single conviction for possession. Vogel v. State, 426 So.2d 863 (Ala.Cr.App.1980), affirmed, 426 So.2d 882 (Ala.1982), cert. denied, 462 U.S. 1107, 103 S.Ct. 2456, 77 L.Ed.2d 1335 (1983). Additionally, when one type of controlled substance is discovered at the time of arrest, and then later a different drug is discovered, the possession *785 statute, § 20-2-70(a), Code of Alabama 1975, has been violated only one time.
"[T]he police officers had the appellant in their constant custody and control from the moment they discovered the marijuana on the floorboard beside her feet. Such control over the appellant was never relinquished. She had the pills secreted on her person, and thus in her possession at the same point in time. We find no difference in the fact that these pills were not discovered until later when she was searched at the City Jail, than if they had been discovered in her purse while she was at the scene, or in the glove compartment, or, for that matter, in the trunk of her car."
Smith v. State, 472 So.2d at 685-86. However, when simultaneous possession of different controlled substances includes possession of a quantity that violates the trafficking statute, § 20-2-80, Code of Alabama 1975, then convictions for both possession and trafficking are authorized. Sears v. State, 479 So.2d 1308 (Ala.Cr.App. 1985). The question presented by the appellant is a combination of Smith and Sears. Whether a person can be convicted of both trafficking and possession when only one type of controlled substance is involvedthe trafficking conviction is based on a sale of more than 28 grams of cocaine and the possession conviction is based on a subsequent discovery of less than 28 grams of cocaine during a search of the person's personal effects. We believe that the rationale in Sears dictates our holding that in the present case multiple convictions are authorized.
Sears had on his person a few diazepam tablets and 34.1 grams of cocaine, for which he was convicted of possession and trafficking, respectively. In determining whether multiple convictions were proper, we said:
"In the instant case, the offense of possession and the offense of trafficking in cocaine are separate offenses governed by separate statutes, §§ 20-2-70 and 20-2-80(2), respectively, which provide separate punishments. However, neither statute suggests whether the Alabama Legislature intended that cumulative sentences be imposed when the violation of both statutes has been discovered at the same place and the same time. Thus, we must determine whether the legislature has in fact undertaken to create separate offenses which would allow cumulative punishments in a single trial in a case involving the possession of several controlled substances, on possession supporting the conviction of trafficking and the other supporting the conviction of possession."
Sears v. State, 479 So.2d at 1311. We found that "the legislature intended to create two separate crimes for which separate convictions and cumulative punishments were authorized." Id., at 1313. The trafficking statute, enacted nearly a decade after the possession statute, "was enacted in 1980 `to curb an apparent widespread distribution and sale of such drugs in the state' for `the legislature saw the need to pass further legislation to control the sale, use, and distribution of certain controlled substances.'" Id. Consequently, we held "that the offenses of possession and trafficking were intended by the legislature to be separate offenses warranting cumulative punishments." Id., at 1311-12.
We appended a caveat to that holding: "If the offenses of possession and trafficking stem from possession of the same controlled substance, the two offenses are not separate offenses, but rather the offense of possession is a lesser offense included in the offense of trafficking. See, Kerr v. State, 474 So.2d 145 (Ala.1985)." We still adhere to that caveat, but it does not apply to the facts of this case; the caveat refers to situations where the defendant's only act is possession of the controlled substance, as in Kerr (a small quantity of marijuana was in a pouch next to Kerr, and several pounds of marijuana were discovered in the trunk of the car). In the present case, there were two separate acts, the sale of more than 28 grams of cocaine and the subsequent possession of less than 28 grams of cocaine. It would be illogical to treat this situation differently from a situation where the appellant sold in excess of 28 grams of cocaine to a person sitting in *786 the front of his car, and then turned around and sold the remainder of what he then possessed to someone sitting in the back of his car. Clearly, that would be two violations. Just as in Sears, we believe that "the legislature intended to permit the application of both statutes to the present situation, thereby authorizing multiple punishments." Sears v. State, 479 So.2d at 1313-14. We, therefore, deny appellant's application for rehearing and affirm both convictions with their concomitant consecutive sentences.
OPINION EXTENDED; APPLICATION FOR REHEARING OVERRULED.
All the Judges concur.